■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISIDRO RODRIGUEZ, Appellant. [897 NYS2d 42]—

Judgment, Supreme Court, New York County (Edward J. Mc-Laughlin, J.), rendered February 27, 2008, convicting defendant, after a jury trial, of four counts of criminal possession of a forged instrument in the second degree, and sentencing him, as a second felony offender, to concurrent terms of $3^{1}/_{2}$ to 7 years, unanimously affirmed.

In March 2007, a detective was assigned to investigate an unspecified crime in his precinct. He interviewed the complainant who identified "Devine Perez" as a suspect and provided a photograph of Perez and Perez's telephone number. The detective called the number and the person who answered identified himself as Perez and stated that he was in Connecticut and would not be able to return to New York to speak with the detective.

On March 19, 2007, the detective apprehended the suspect he was looking for and determined that his actual name was Isidro Rodriguez, the defendant. The detective explained that he had received information as to where the suspect might be in Manhattan and, as he was driving to the location, with the suspect's photograph in hand, he spotted defendant, whom he recognized as the suspect, and they made eye contact with each other. The detective got out of his car and followed defendant, who turned several times and looked back at the detective. The detective then stopped defendant, who was wearing a tan corduroy suit, and arrested him for the crime he had been investigating.

In a search incident to the arrest, the detective recovered from defendant's wallet identification in his true name, Isidro Rodriguez. From defendant's pocket, the detective recovered a New York State driver's license, a nondriver New York State Department of Motor Vehicles identification card, a Social Security card, and a permanent resident card, each of which was in the name "Louis D. Amadou." Upon examination, the detective determined each of the documents in Amadou's name to be fake. The Social Security card had no photograph on it, but the other documents bore pictures of defendant wearing a tan

corduroy suit jacket. In addition, the detective recovered a number of nearly identical loose photographs of defendant wearing a tan corduroy jacket, which were sized to fit identification cards.

During pedigree questioning, defendant said that his name was "Isidro Pedro Rodriguez." During the ride to central booking, defendant volunteered that he was "worried about the IDs that were found in his pocket." A redacted version of a letter sent by defendant to the court prior to trial was introduced into evidence in which defendant admitted that upon searching him "the detectives retrieved my wallet consisting or containing of a forged driver's license, New York State identification card, Social Security Card as well as a forged INS card." Defendant also asked in the letter that the court intervene and allow him to take a guilty plea.

A person commits the crime of criminal possession of a forged instrument in the second degree "when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10" (Penal Law § 170.25). "Knowledge and intent are two separate elements that must each be proven beyond a reasonable doubt by the People" and "knowledge alone is not sufficient to hold [a] defendant criminally liable for possessing a forged instrument" (*People v Bailey*, 13 NY3d 67, 71, 72 [2009] [rejecting the argument that "the requisite intent for possessing a forged instrument can be drawn from defendant's presence in a shopping district, his (knowing) possession of counterfeit bills, and his larcenous intent"]; *see also People v Brunson*, 66 AD3d 594 [2009]).

In the case before us, only the element of intent is at issue. Intent "is the product of the invisible operation of [the] mind" (*People v Samuels*, 99 NY2d 20, 24 [2002] [internal quotation marks and citation omitted]). As such, direct proof is rarely available and the requisite proof may be circumstantial (*see People v Sanchez*, 86 NY2d 27, 32-33 [1995]). While a defendant's intent must be specific to the crime, the specific intent required for possession of a forged instrument is a state of mind that may "be inferred from the act itself . . . [or] from the defendant's conduct and the surrounding circumstances" (*People v Bracey*, 41 NY2d 296, 301 [1977] [internal quotation marks and citation omitted]; *see People v Barnes*, 50 NY2d 375, 381 [1980]; *People v Dallas*, 46 AD3d 489, 491 [2007], *lv denied* 10 NY3d 809 [2008]; *see also People v Tunstall*, 278 AD2d 585, 586-587 [2000], *lv denied* 96 NY2d 788 [2001]). Further, the intent to defraud or deceive need not be targeted at any specific

person; a general intent to defraud suffices and the statute does not require that the defendant actually attempt to use the forged documents (*see People v Dallas*, 46 AD3d at 491; *see also People v Wellington*, 41 AD3d 517 [2007], *lv denied* 9 NY3d 883 [2007]).

Applying these principles, legally sufficient evidence was presented at trial from which the jury could rationally infer that defendant possessed the forged identification cards with the intent to defraud, deceive or injure another.

First, the identity cards recovered were undisputedly fakes and served no purpose other than to establish the identity of the holder. Because the need for such proof arises only when the bearer seeks to obtain some privilege, right, benefit or entitlement, the jurors could rationally conclude that there was no reason for defendant to knowingly possess *four* false identity documents unless he intended to present then as real, i.e., to defraud or deceive another (*see People v Dallas*, 46 AD3d at 491 ["only conceivable purpose" for possession of "a set of documents creating two different identities for the same person" was that "they would be passed off as the genuine articles in order to deceive or defraud anyone to whom they were presented, and there would be no reason for anyone to buy them without planning to use them in that manner"]).

Second, it is highly significant on the issue of intent that three of the four concededly fake identification cards bore photographs of defendant wearing what appeared to be the same corduroy jacket that he was wearing on the day he was arrested, as did the four additional loose photographs, sized to fit identification cards, recovered from defendant's pocket. From this, the jury could rationally conclude that defendant had been actively involved in the fabrication of the fake identification cards, which he intended to use for some deceptive purpose (*see People v Colon*, 306 AD2d 213, 214 [2003]).

Lastly, the jury could rationally conclude that defendant had a motive to create a false identity for the specific purpose of evading law enforcement authorities in connection with the Devine Perez investigation. This may be inferred from the detective's testimony that he telephoned the suspect known to him as Perez and advised him that he wanted to speak to him, and that he apprehended the suspect he was looking for and determined that his actual name was Isidro Rodriguez, the defendant. That defendant knew that the police were looking for him is further supported by the detective's testimony that when he spotted the suspect, the pair made eye contact, and the suspect repeatedly looked back at the detective as he walked away.

Thus, viewing the totality of these circumstances, which distinguish this matter from *People v Brunson* (66 AD3d at 595), it was reasonable for the jury to conclude that there was no other logical explanation for defendant's possession of the four identification cards, except to defraud, deceive or injure others.

*People v Bailey* (13 NY3d 67 [2009], *supra*), does not mandate a different conclusion. Although the detective in this case did not see defendant present any of the identification cards to any person or public authority and had no information that defendant had ever done so, *Bailey* does not make the actual use of the forged instrument a prerequisite to a finding of deceitful intent. The majority in *Bailey* distinguished *Bracey* and *Dallas* on the ground that the criminal intent in those cases was specific to the crime committed, whereas the only reasonable inference to be drawn in *Bailey* was that the defendant's conduct was common to larceny, a crime completely unrelated to possession of a forged instrument. However, the Court of Appeals did not abrogate the holdings of *Bracey* or *Dallas* that intent may be inferred and that the statute does not require that the defendant actually attempt to use the forged documents in order to prove an intent to defraud, deceive or injure. Indeed, to require defendant to actually use or attempt to use the forged instrument would by judicial action alter the elements of the legislatively enacted crime, which requires only that with the requisite knowledge and intent, a defendant "utters or possesses any forged instrument of a kind specified in section 170.10" (Penal Law § 170.25).

Taken as a whole, the court's main and supplemental charges conveyed the proper standards and properly instructed the jury that the People had the burden to prove beyond a reasonable doubt that the statutorily required intent to defraud, deceive or injure had to coincide with defendant's possession of the fraudulent documents (*see People v Fields*, 87 NY2d 821, 823 [1995]). Given the court's repeated statements that the People had to prove that defendant possessed the requisite intent at the time of the possession, we find no reasonable possibility that the jury could have misunderstood the court's use of the words "if needs be" or "if the opportunity arose" as reducing or relieving the People of their obligation to prove the intent element of the charge. Concur—Andrias, J.P., Sweeny, Nardelli, Catterson and DeGrasse, JJ.