**MARCO A. MENDOZA, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0060

Supreme Court of the Virgin Islands

August 25, 2011

662

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 25, 2011)

HODGE, C.J. Marco A. Mendoza appeals his convictions for procuring false instruments under 14 V.I.C. § 795 and making fraudulent claims upon the government under 14 V.I.C. § 843(3). While there was sufficient evidence presented at trial to sustain Mendoza's conviction under section 795, the People failed to meet its burden with regards to section 843(3). Accordingly, the judgment of the Superior Court is affirmed in part and reversed in part.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

In December 2008, Mendoza, a safari taxi operator, sold his license plates and corresponding taxi medallion number 0285 and deposited them with Judith Wheatley, the Executive Director of the Virgin Islands Taxicab Commission (the Commission). That same day Mendoza presented a lease to Wheatley for taxi medallion number 0456 and its corresponding license plates. Subsequently, on June 5, 2009, Mendoza returned to the Commission to obtain his 2009 business license for medallion number 0456. Wheatley informed Mendoza, however, that he had outstanding fees that required being paid before she could issue him a business license. Mendoza refused to pay. Wheatley and Mendoza then proceeded to Wheatley's office where Wheatley informed Mendoza that he needed to retrieve the 0456 license plates and bring them to the Commission. Wheatley also asked Mendoza to hand her some papers that he had been holding during their conversation. Mendoza complied. Amongst the papers were a vehicle registration and an inspection lane checklist that indicated that a vehicle with the license plate number 0285 had been inspected on the day prior, and that an eighty-five dollar

($85.00) ticket had been paid at window #1 of the Bureau of Motor Vehicles (BMV). Further, the documents listed Mendoza as the owner of the vehicle. This information raised Wheatley's suspicion, as the 0285 license plates were in the possession of the Commission. Wheatley inquired as to the location of Mendoza's safari, which Mendoza eventually admitted was parked at his house. Wheatley then instructed Mendoza to go and bring her the license plates from the safari.

After Mendoza left Wheatley's office, she instructed Officer Javier Estrill, the Supervisor of Enforcement for the Commission, to go to Mendoza's house and take pictures of the safari. Officer Estrill testified that upon arriving at Mendoza's residence he observed Mendoza's safari, and that it was covered in soot, had flat tires, and appeared to be inoperable.[1] He also noted that the safari was missing its license plates. While Officer Estrill was locating and photographing Mendoza's safari taxi, Wheatley contacted Myrna George, the Assistant Director of the BMV, to inform George that Mendoza was in possession of documents indicating that a safari with the license plate number 0285 had been inspected by the BMV the day prior, even though the 0285 license plates were actually physically located at Wheatley's office at the time.

In order to determine who had completed the vehicle registration and inspection lane checklist, Wheatley faxed the two documents to George. Upon review of the documents, George recognized the signature of the BMV inspector as belonging to St. Clair DeSilvia. George testified that the documents indicated that DeSilvia had inspected a safari taxi registered to Mendoza with the license plate number 0285, and that based on DeSilvia's inspection, the safari taxi was roadworthy. George testified that after DeSilvia had completed the inspection lane checklist and signed the vehicle registration — certifying that he had inspected a safari taxi owned by Mendoza with the license plate number 0285 — someone had taken those documents to window #1, inside the BMV, and paid an eighty-five dollar ($85.00) outstanding ticket.[2] Although he was initially uncooperative, DeSilvia eventually admitted to George that he had never inspected Mendoza's safari taxi.

---

[1] To support this testimony the People introduced pictures of the safari that Officer Estrill had taken on June 5, 2009.

[2] George was able to make this determination from viewing the vehicle registration that DeSilvia had signed.

Based on this evidence, DeSilvia and Mendoza were arrested and charged under title 14, section 11(a) of the Virgin Islands Code with aiding and abetting one another in procuring false or forged instruments pursuant to title 14, section 795 and making fraudulent claims upon the government pursuant to title 14, section 843(3).[3] Specifically, in regards to Mendoza, the People alleged that he procured and filed an inspection lane checklist and vehicle registration with the BMV for a vehicle with the license plate number 0285, knowing that the documents were false. A two day jury trial, which began on February 8, 2010, resulted in convictions against both Mendoza and DeSilvia on all counts.[4] In a judgment entered on August 4, 2010, the trial court sentenced Mendoza to two years for procuring false or forged instruments and one year for making fraudulent claims upon the government. These sentences were ordered to run concurrently and were suspended.[5] Mendoza filed his timely notice of appeal on July 23, 2010.

## II. ANALYSIS

### A.

According to title 4, section 32(a) of the Virgin Islands Code, we possess jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Since the Superior Court's August 4, 2010 Judgment constitutes a final judgment, this Court possesses jurisdiction over Mendoza's appeal.

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable

---

[3] Although the amended information charges both Mendoza and DeSilvia with aiding and abetting, it is clear from the specific allegations therein that Mendoza is actually being charged as the individual who committed the offenses. *See* 14 V.I.C. § 11(a) ("Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

[4] DeSilvia's convictions are not part of this appeal.

[5] Mendoza was also placed on supervised probation for six months, ordered to perform fifty hours of community service, and fined two hundred and fifty dollars ($250.00) for each count.

to the People, and affirm the conviction if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Stanislas v. People*, S. Ct. Crim. No. 2009-0059, 2011 V.I. Supreme LEXIS 12, at *10 (V.I. May 24, 2011) (quoting *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009)). We review a trial court's denial of a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure *de novo. See Stevens v. People*, 52 V.I. 294, 304-05 (V.I. 2009).

### B.

Mendoza first argues that 14 V.I.C. § 795, as applied in this case, is unconstitutionally vague and that his conviction under the statute violated due process. In support of this argument, Mendoza relies on the United States Supreme Court's holding in *Skilling v. United States*, 561 U.S. ___, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). He contends that the provisions of section 795 are similar to those found in 18 U.S.C. § 1346, the honest services statute. This argument, however, is misplaced.

 "To satisfy due process, a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling*, 130 S. Ct. at 2927-28 (internal quotation marks omitted). Section 795 meets both of these requirements. According to title 14, section 795:

> Whoever knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within the Virgin Islands, which instrument if genuine, might be filed, registered or recorded under the laws of the Virgin Islands or under the laws of the United States applicable to the Virgin Islands, shall be fined not more than $1,000 or imprisoned not more than 5 years, or both.

First, section 795's language clearly instructs ordinary people as to what conduct is prohibited. *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *Gov't of V.I. v. Steven*, 134 F.3d 526, 527-28 (3d Cir. 1998). The statute is concise, plain, and unambiguous. It criminalizes knowingly procuring or offering false or forged instruments to be filed, registered, or recorded in a public office in the Virgin Islands, which if genuine might have been filed, registered, or recorded in that public office. The text of the statute defines the criminal offense with sufficient definite-

ness that an ordinary person can understand. Second, section 795 also clearly states that any individual who knowingly commits the proscribed act is criminally liable. This provides clear guidelines for law enforcement, prosecutors, and juries, leaving little room for arbitrary enforcement. *See Kolender*, 461 U.S. at 357-58. Section 795 thus provides unambiguous standards delineating what actions an individual must take to be criminally liable for procuring false instruments and it does not encourage arbitrary and discriminatory enforcement. *See id.*

■ Mendoza's reliance on *Skilling* to support his argument that section 795 is unconstitutionally vague is misguided. In *Skilling*, the Court was asked to determine whether "the intangible right of honest services" language of 18 U.S.C. § 1346 was unconstitutionally vague.[6] *Skilling*, 130 S. Ct. at 2927. In that case, the appellant Skilling argued that "the intangible right of honest services" language did not adequately define what behavior is prohibited under the statute. *Id.* at 2928. Although the Supreme Court did acknowledge the potential breadth of section 1346, it declined to invalidate it as unconstitutionally vague. *Id.* Instead, it construed the phrase "the intangible right of honest services" to preserve what Congress clearly intended the statute to cover — "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Id.* Section 795, in contrast, does not contain any potentially broad language. Rather, it provides unambiguous language clearly defining what actions are prohibited under title 14, section 795. Therefore, 14 V.I.C. § 795 is not unconstitutionally vague, and nothing in *Skilling* suggests otherwise.[7]

## C.

Mendoza next argues that the People failed as a matter of law to prove that he knowingly procured or offered for filing any false or forged instrument under section 795. Specifically, he claims that neither a vehicle

---

[6] Section 1346 of title 18 of the United States Code states: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

[7] It remains unclear why Mendoza would rely on *Skilling*, which involved a statute with much broader language than 14 V.I.C. § 795, to support his argument that section 795 is unconstitutionally vague, especially since the United States Supreme Court declined to find the statute in *Skilling* unconstitutionally vague. If anything, the holding in *Skilling* supports the conclusion that section 795 is not unconstitutionally vague.

registration or inspection lane checklist constitute an "instrument" under section 795 because an instrument is defined as an agreement. Alternatively, Mendoza argues that the Legislature's enactment of title 14, sections 1782 and 1783 demonstrate that it did not intend to punish Mendoza under sections 795 or 843(3).

█ In support of his contention that neither a vehicle registration or inspection lane checklist constitutes an instrument, Mendoza points to case law interpreting a similar California statute with almost identical language as section 795.[8] Although Mendoza cites to older California case law which has interpreted the word "instrument" to mean "an agreement expressed in writing, signed, and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty,"[9] more recent authority has demonstrated that the limited definition of instrument articulated in those cases is no longer correct and should not be perpetuated. *See People v. Powers*, 117 Cal. App. 4th 291, 11 Cal. Rptr. 3d 619, 623 (2004). Instead, the prevailing authority in California is that the determination of whether a particular document constitutes an instrument is based on the legislative purpose behind the statute, which is to safeguard the integrity of official records. *See People v. Parks*, 7 Cal. App. 4th 883, 9 Cal. Rptr. 2d 450, 452 (1992). In fact, many of these later decisions suggest that any "document entitled to be filed, registered, or recorded is of sufficient legal importance that it constitutes an instrument and is worthy of protection." *See People v. Hassan*, 168 Cal. App. 4th 1306, 86 Cal. Rptr. 3d 314, 321 (2008) (internal quotation marks omitted). Under this broader view of what constitutes an "instrument," a variety of legal documents, including a temporary restraining order falsified to expand its requirements, a community work referral form falsified to show completion of a condition of probation, and a fishing activity report falsifying the amount of fish caught have been held to be instruments. *Parks*, 9 Cal. Rptr. 2d at 452;

---

[8] Under section 115(a) of the California Penal Code:

Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

[9] *See People v. Wood*, 161 Cal. App. 2d 24, 325 P.2d 1014, 1017 (1958); *People v. Fraser*, 23 Cal. App. 82, 137 P. 276, 277 (1913).

*People v. Tate*, 55 Cal. App. 4th 663, 64 Cal. Rptr. 2d 206, 207 (1997); *Powers*, 11 Cal. Rptr. 3d at 624. Moreover, the California Court of Appeals has specifically held that "the definition of 'instruments' as the term is used in section 115 is very broad and would include at least most documents filed with the [Department of Motor Vehicles]." *People v. Alsayad*, No. D048930, 2008 Cal. App. Unpub. LEXIS 3746, at *21 (May 7, 2008) (unpublished opinion) (citing *Powers*, 11 Cal. Rptr. 3d at 621-25).

■ The Washington Supreme Court has also given the term instrument — as it is used within its counterpart to 14 V.I.C. § 795 — a more expansive definition than Mendoza suggests.[10] *See State v. Price*, 94 Wn.2d 810, 620 P.2d 994, 998-99 (1980). In *Price*, the court held that documents which are required or permitted by statute or valid regulation to be filed, registered, or recorded in a public office are considered instruments if

> (1) the claimed falsity relates to a material fact represented in the instrument; and (2a) the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or (2b) the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document.

*Id.* at 999. We find this analysis persuasive.

■ Applying this analysis to the facts of this case, we conclude that the contents of the vehicle registration and inspection lane checklist were materially false in representing that DeSilvia, a BMV inspector, had physically inspected Mendoza's safari taxi and that it had passed inspection and was roadworthy. Further, if undetected, the government would have necessarily relied and acted upon that information in issuing

---

[10] Under WASH. REV. CODE ANN. § 40.16.030:

> Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, is guilty of a class C felony and shall be punished by imprisonment in a state correctional facility for not more than five years, or by a fine of not more than five thousand dollars, or by both.

Mendoza a registration license to operate his safari taxi upon the public highways of the Virgin Islands. *See* 20 V.I.C. §§ 331-333, 339. This could have potentially resulted in injury to other users of the public roads as well as passengers of the falsely registered safari taxi if Mendoza's vehicle was not in fact roadworthy. Accordingly, the vehicle registration and inspection lane checklist fall within the definition of instruments under title 14, section 795.

■ ■ Mendoza also argues that based on this Court's holding in *Miller v. People*,[11] the People should have charged him with violating either section 1782 or 1783 of title 14, not sections 795 and 843(3). He thus contends that the People improperly charged him under sections 795 and 843(3) because sections 1782 and 1783 criminalize falsification of public records. Mendoza, however, has misinterpreted *Miller*. In *Miller*, this Court was asked whether Miller's prosecution for making a false or fraudulent statement or misrepresentation on his employment application under section 843(3) constituted a prosecution for the falsification of public records for which there is no limitation period under title 5, section 3541(a)(1). *Miller v. People*, 54 V.I. 398, 403-404 (V.I. 2010). We concluded that since the Legislature had expressly proscribed the falsification of public records in sections 1782 and 1783, but failed to include such an express proscription in section 843(3), it did not intend to criminalize the falsification of public records in the latter section. *See id.* As such, we noted that sections 1782 and 1783 criminalize the falsification of public records, while section 843(3) proscribes the making of false statements or representations to the government. *See id.* at 406. In the present case, the vehicle registration and inspection lane checklist would not have become public records until they were filed with the BMV. Thus, any falsification of these documents before they were filed would not constitute falsification of a public record under either section 1782 or 1783. *See id. at* 404-407; *People v. Garfield*, 40 Cal. 3d 192, 219 Cal. Rptr. 196, 707 P.2d 258, 260 (1985). However, filing these documents with the BMV, which falsely indicates that the vehicle had been physically inspected and was roadworthy, would constitute making a false representation upon the government under section 843(3) and filing a false instrument under section 795. Accordingly, Mendoza's

---

[11] S. Ct. Crim. No. 2009-0045, 2010 V.I. Supreme LEXIS 40 (V.I. Sept. 16, 2010).

argument that the People were prohibited from charging him under sections 843(3) and 795 because the facts alleged against him involved the falsification of public records is meritless.

## D.

Mendoza next argues that the Superior Court erred in denying his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29[12] because no rational jury could have found the essential elements of the crime of filing a forged instrument beyond a reasonable doubt. He contends that the vehicle registration and inspection lane checklist were not false or forged, that no "filing" occurred, and that these documents could not have been filed even if genuine. These arguments, however, are based on Mendoza's misinterpretation of section 795 and the evidence presented at trial.

■ The elements of proof necessary to establish a violation of 14 V.I.C. § 795 are: 1) a person procured or offered a false or forged instrument to be filed, registered, or recorded in a public office in this territory; 2) the instrument, if genuine, was one which might be filed, registered, or recorded; and 3) the person knew that the instrument was false or forged. At trial, the People presented evidence that Mendoza went to the Commission on June 5, 2009 to obtain a business license to operate a safari taxi with the license plates and corresponding taxi medallion number 0456. Wheatley testified that while at the Commission, Mendoza was in possession of a vehicle registration and inspection lane checklist from the BMV that indicated that a vehicle owned by Mendoza with the license plate number 0285 had been inspected on June 4, 2009, and that it was found to be roadworthy. However, Mendoza had sold his license plates and corresponding taxi medallion number 0285 and deposited them with the Commission several months before, in December 2008. Moreover, Wheatley confirmed that on June 4, 2009, the 0285 license plates were still in the possession of the Commission. Officer Estrill also testified that on June 5, 2009, he went to Mendoza's residence and observed that Mendoza's safari was covered in soot, had flat tires, and appeared to be inoperable.

---

[12] Federal Rule of Criminal Procedure 29 is made applicable to the Superior Court through Superior Court Rule 7.

■ ■ Viewing this evidence in the light most favorable to the People, as the standard of review requires, there is sufficient evidence to allow a jury to find Mendoza guilty beyond a reasonable doubt of knowingly procuring false instruments under section 795. Wheatley's testimony that the 0285 license plates and taxi medallion were physically located at the Commission on June 4, 2009, was sufficient to allow a reasonable jury to conclude that the vehicle registration and inspection lane checklist, which indicated that a vehicle owned by Mendoza and bearing the license plate number 0285 had been inspected on June 4, 2009, were false. Moreover, Wheatley's testimony that Mendoza physically deposited the 0285 license plates with the Commission when he sold the 0285 license plates and medallion in December 2008 would allow a reasonable jury to conclude that Mendoza knew the vehicle registration and inspection lane checklist were false.[13] A jury could also reasonably infer from Mendoza's possession of the false vehicle registration and inspection lane checklist that he had procured those documents and that he had the intent to file them at the BMV. *See United States v. Hall*, 632 F.2d 500, 502 (5th Cir. 1980) (holding defendant's possession of forged checks was sufficient to allow inference of his intent to deposit them); *People v. Rodriguez*, 71 A.D.3d 450, 897 N.Y.S.2d 42, 45 (N.Y. App. Div. 2010) (holding defendant's possession of fake IDs was sufficient to infer his intent to defraud or deceive). These instruments serve no purpose other than to register a vehicle with the BMV. And since registering a safari taxi requires filing a vehicle registration and inspection lane checklist with the BMV, the jury could rationally conclude that there was no reason for Mendoza to knowingly possess these two falsified documents unless he intended to file them at the BMV. *See Rodriguez*, 897 N.Y.S.2d at 45. This conclusion is supported by the fact that Mendoza was found in possession of these documents while attempting to obtain a business license, which was another instrument he needed to file with the BMV in order to register his safari taxi.[14]

---

[13] Officer Estrill's testimony describing Mendoza's safari on June 5, 2009, as inoperable further supports the conclusion that no physical inspection took place and that Mendoza was aware of as much.

[14] Mendoza argues that since he was turned away from Window #2 — the place at the BMV where people actually file their vehicle registrations, inspection lane checklists, etc. — for not having his business license, he never technically filed the instruments. And therefore he

■ Finally, George's testimony that registering a safari taxi requires filing a host of documents with the BMV, including a vehicle registration and inspection lane checklist, sufficiently established that Mendoza's falsified vehicle registration and inspection lane checklist, if genuine, might be filed with the BMV under the laws of the Virgin Islands. Despite this evidence, Mendoza argues that the falsified vehicle registration and inspection lane checklist could not have been filed with the BMV because he had not yet obtained all the required documents to register his safari taxi, such as his business license. He thus claims that the vehicle registration and inspection lane checklist, even if genuine, could not have been filed with the BMV. This argument, however, misconstrues the statute. Determining whether an instrument, "if genuine, *might* be filed, registered or recorded" is not an inquiry dependent upon other possible requirements or contingencies. The plain language of the statute only requires that the false or forged instruments *might* have been filed, registered, or recorded. The relevant inquiry thus focuses on whether the false or fraudulent instrument is the type of instrument that might be filed, registered or recorded if it were genuine, and not whether it was in fact filed. And since George testified that vehicle registrations and inspection lane checklists are routinely filed with the BMV, there was sufficient evidence to allow a jury to conclude that Mendoza's falsified vehicle registration and inspection lane checklist are the type of instruments, if genuine, that might be filed under the laws of the Virgin Islands. The People therefore presented sufficient evidence to allow a reasonable jury to find Mendoza guilty of procuring false instruments under section 795.

## E.

■ Mendoza also argues that the People failed to prove the elements of 14 V.I.C. § 843(3) beyond a reasonable doubt. He claims that the alleged false statements were made by DeSilvia, a government employee, and as such, fall outside the purpose of the statute. He also claims that the statements on the vehicle registration and inspection lane checklist are irrelevant because he had not obtained a business license, which is a

---

cannot be guilty of filing or recording forged instruments under section 795. This argument misconstrues the statute. Section 795 does not require that a false or forged instrument actually be filed. Rather, it states one must only "knowingly *procure[] or offer[]* a false or forged instrument to be filed . . . ." *See* 14 V.I.C. § 795 (emphasis added).

condition precedent to the BMV exercising jurisdiction, and he was turned away at window #2 before he was able to file the false instruments. Finally, Mendoza asserts that there was no evidence presented at trial that he knew what DeSilvia was doing. These arguments are meritless and unsupported by either facts or case law.[15] However, the People nevertheless failed to establish that Mendoza actually made a false or fraudulent statement or representation.

Section 843(3) imposes criminal liability upon "[w]hoever . . . makes any false or fraudulent statements or representations . . . in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands." Thus, the People were required to prove at trial that Mendoza 1) knowingly 2) made a false or fraudulent statement or representation 3) in a matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands. The People specifically alleged that Mendoza violated section 843(3) by offering a vehicle registration and inspection lane checklist containing false representations to be filed with the BMV.[16] In support of this

---

[15] First, Mendoza argues that section 843(3) is intended only to prevent citizens from making false claims to the government. This argument, however, is contradicted by the plain language of the statute which states that "[w]hoever . . . makes any false or fraudulent statement or representation" may be held liable for the penalties it prescribes. 14 V.I.C. § 843(3) (emphasis added). Further, it was allegedly Mendoza, a citizen, who made the false representation to the BMV that his safari taxi had been physically inspected and was roadworthy when he offered the vehicle registration and inspection lane checklist to be filed at window #2. Second, Mendoza argues that the BMV could not have exercised jurisdiction over him because he had not gotten his business license at the time he was claimed to have offered these documents for filing. This argument completely misconstrues the statute. Mendoza's vehicle registration and inspection lane checklist, which allegedly falsely represent that his safari taxi had been physically inspected and was roadworthy, are matters within the jurisdiction of the BMV. And whether he had a business license at the time he allegedly offered them to be filed at window #2 has no bearing on the matter. Finally, Mendoza's argument that there was no evidence presented at trial that he knew what DeSilvia was doing is contradicted by the facts. DeSilvia admitted to falsifying the vehicle registration and inspection lane checklist and Mendoza was in possession of the falsified instruments. Moreover, Officer Estrill testified that Mendoza's safari taxi was parked at Mendoza's house and appeared inoperable. Based on this evidence, the jury could have reasonably inferred that Mendoza and DeSilvia had acted in concert.

[16] The People conceded at trial that Mendoza was not being charged with violating section 843(3) for presenting a vehicle registration and inspection lane checklist containing false representations to Wheatley on June 5, 2009 at the Virgin Islands Taxi Cab Commission.

675

allegation, the People relied on George's testimony describing the normal process of registering a safari taxi with the BMV. According to George:

> After coming through [the] Inspection Lane in the back, customers then come inside the building. And the first stop would be to Window #1, which is the Superior Court. At the Superior Court they check for any outstanding traffic tickets they may have. In this particular case, Mr. Mendoza had one traffic ticket which was paid in the amount of $85 on 6/4/09. . . . After Window #1 the Bureau of Motor Vehicles starts at Window #2. Window #2 is the window that you take in all the documents for processing.

(J.A. at 217-18.) The People contend that based on this testimony there was sufficient circumstantial evidence to allow the jury to infer that Mendoza had attempted to file the vehicle registration and inspection lane checklist at window #2, but was turned away for not having a business license.[17] The People claim that this inference is further supported by Wheatley's testimony that Mendoza attempted to obtain his 2009 business license on June 5, 2009, which he needed to register his safari at window #2.

██ ██ This is insufficient evidence to allow a rational jury to conclude that Mendoza offered the falsified vehicle registration and inspection lane checklist to be filed at window #2 of the BMV.[18] Even assuming Mendoza went to window #1 and paid the outstanding traffic ticket, that in and of itself is not sufficient to allow a jury to reasonably infer that he then proceeded to window #2 after he paid the outstanding ticket.[19] It is equally as likely that Mendoza chose not to immediately proceed to window #2, waiting instead until after he had obtained his business license. While George testified that people normally proceed

---

[17] There is no direct evidence which places Mendoza at window #2.

[18] Although the issue was disputed at trial, in his brief Mendoza's counsel concedes the fact that Mendoza attempted to file the falsified vehicle registration and inspection lane checklist with the BMV through window #2. During oral arguments, however, Mendoza's counsel informed this Court that this concession was inadvertent, and after oral arguments, he filed an errata sheet deleting it from the brief. We will accordingly disregard it and rely on the trial court record instead.

[19] Window #1 is run by the Superior Court and is not actually part of the BMV, although it is located inside of the BMV building. Moreover, window #1 is not involved in the inspection and registration process, nor are any documents filed, registered, or recorded at that window. Window #1 only involves record checks for outstanding traffic liens on vehicles.

directly from window #1 to window #2 when they register a vehicle, the People presented no evidence that tended to suggest that Mendoza actually went to window #2. No witness from the BMV testified that Mendoza actually presented any documents at Window #2. Instead, the People rely on circumstantial evidence that Mendoza went to window #1 to prove that he also went to window #2.[20] Concluding that Mendoza went to window #2 based solely on evidence that he had gone to window #1 would be nothing more than speculation or conjecture. *See People v. Clarke*, S. Ct. Crim. No. 2009-0104, 2011 V.I. Supreme LEXIS 11, at *17 (V.I. April 12, 2011) (holding evidence must rise above mere speculation); *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996) ("[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference."). Accordingly, we conclude that the Superior Court erred in denying Mendoza's Rule 29 motion with regard to his charge of making fraudulent claims upon the government under 14 V.I.C. § 843(3).

## III. CONCLUSION

There was sufficient evidence presented at trial to allow a rational jury to find Mendoza guilty beyond a reasonable doubt of procuring false instruments pursuant to title 14, section 795. However, there was insufficient evidence to sustain Mendoza's conviction for making fraudulent claims upon the government pursuant to title 14, section 843(3). Therefore, we affirm Mendoza's conviction for procuring false instruments and reverse his conviction for making fraudulent claims upon the government.

---

[20] Because on June 5, 2009, Mendoza was in possession of the falsified vehicle registration indicating that on June 4, 2009, someone had paid an outstanding traffic ticket that he had, a jury could reasonably infer that Mendoza had paid the outstanding ticket.