**ST. CLAIR DESILVIA, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0051

Supreme Court of the Virgin Islands

September 29, 2011

CLIVE RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Appellant.*

MATTHEW C. PHELAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 29, 2011)

HODGE, C.J. St. Clair DeSilvia appeals his convictions for procuring false instruments under 14 V.I.C. § 795 and making fraudulent claims upon the government under 14 V.I.C. § 843(3). While there was sufficient

evidence presented at trial to sustain DeSilvia's conviction under section 795, the People failed to meet its burden with regards to section 843(3). Accordingly, the judgment of the Superior Court is affirmed in part and reversed in part.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

DeSilvia, an inspector at the Bureau of Motor Vehicles (BMV), was charged and convicted of assisting Marco Mendoza in procuring false instruments and in making fraudulent claims upon the government. Specifically, the People alleged that DeSilvia prepared an inspection lane checklist and affixed a stamp on a 2008 vehicle registration for a vehicle with the license plate number 0285, certifying that the vehicle was roadworthy, without actually physically inspecting the vehicle and knowing that Mendoza would file those documents with the BMV. To support these allegations, the People presented evidence at trial that in December 2008, Mendoza, a safari taxi operator, sold his license plates and corresponding taxi medallion number 0285 and deposited them with Judith Wheatley, the Executive Director of the Virgin Islands Taxicab Commission (the Commission). That same day, Mendoza presented a lease to Wheatley for taxi medallion number 0456 and its corresponding license plates. Subsequently, on June 5, 2009, Mendoza returned to the Commission to obtain his 2009 business license for medallion number 0456. Wheatley informed Mendoza, however, that he had outstanding fees that required being paid before she could issue him a business license. Mendoza refused to pay. Wheatley and Mendoza then proceeded to Wheatley's office, where Wheatley informed Mendoza that he needed to retrieve the 0456 license plates and bring them to the Commission. Wheatley also asked Mendoza to hand her some papers that he had been holding during their conversation. Amongst the papers were a vehicle registration and an inspection lane checklist that indicated that a vehicle with the license plate number 0285 had been inspected on the day prior, and that an eighty-five dollar ($85.00) ticket had been paid at window #1 of the BMV. Further, the documents listed Mendoza as the owner of the vehicle. This information raised Wheatley's suspicion, as the 0285 license plates were in the possession of the Commission. Wheatley inquired as to the location of Mendoza's safari, which Mendoza eventually admitted was parked at his house. Wheatley then instructed Mendoza to go and bring her the license plates from the safari.

After Mendoza left Wheatley's office, she instructed Officer Javier Estrill, the Supervisor of Enforcement for the Commission, to go to Mendoza's house and take pictures of the safari. Officer Estrill testified that upon arriving at Mendoza's residence he observed Mendoza's safari, and that it was covered in soot, had flat tires, and appeared to be inoperable.[1] He also noted that the safari was missing its license plates. While Officer Estrill was locating and photographing Mendoza's safari taxi, Wheatley contacted Myrna George, the Assistant Director of the BMV, to inform George that Mendoza was in possession of documents indicating that a safari with the license plate number 0285 had been inspected by the BMV the day prior, even though the 0285 license plates were actually physically located at Wheatley's office at the time.

In order to determine who had completed the vehicle registration and inspection lane checklist, Wheatley faxed the two documents to George. Upon review of the documents, George recognized the signature of the BMV inspector as belonging to DeSilvia. George testified that the documents indicated that DeSilvia had inspected a safari taxi registered to Mendoza with the license plate number 0285, and that based on DeSilvia's inspection, the safari taxi was roadworthy. George testified that after DeSilvia had completed the inspection lane checklist and signed the vehicle registration — certifying that he had inspected a safari taxi owned by Mendoza with the license plate number 0285 — someone had taken those documents to window #1, inside the BMV, and paid an eighty-five dollar ($85.00) outstanding ticket.[2] Although he was initially uncooperative, DeSilvia eventually admitted to George that he had never seen or inspected Mendoza's safari taxi prior to completing the vehicle registration and inspection lane checklist.

Based on this evidence, DeSilvia and Mendoza were arrested and charged under title 14, section 11(a) of the Virgin Islands Code with aiding and abetting one another in procuring false or forged instruments pursuant to title 14, section 795 and making fraudulent claims upon the

---

[1] To support this testimony the People introduced pictures of the safari that Officer Estrill had taken on June 5, 2009.

[2] George was able to make this determination from viewing the vehicle registration that DeSilvia had signed.

government pursuant to title 14, section 843(3).[3] A two day jury trial, which began on February 8, 2010, resulted in convictions against both DeSilvia and Mendoza on all counts.[4] In a judgment entered on August 4, 2010, the trial court sentenced DeSilvia to two years for procuring false instruments and one year for making fraudulent claims upon the government. These sentences were ordered to run concurrently and were suspended.[5] DeSilvia filed his timely notice of appeal on July 26, 2010.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

According to title 4, section 32(a) of the Virgin Islands Code, we possess jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Since the Superior Court's August 4, 2010 Judgment constitutes a final judgment, this Court possesses jurisdiction over DeSilvia's appeal.

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Mendoza v. People*, S. Ct. Crim. No. 2010-0060, 2011 V.I. Supreme LEXIS 26, at *6 (V.I. Aug. 25, 2011). Accordingly, we review

---

[3] Although the amended information charges both Mendoza and DeSilvia with aiding and abetting, it is clear from the specific allegations therein that Mendoza is actually being charged as the individual who committed the offenses and DeSilvia is being charged with aiding and abetting Mendoza's commission of these crimes. *See* 14 V.I.C. § 11(a) ("Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.")

[4] Although Mendoza and DeSilvia were tried together in the Superior Court, they have appealed separately and Mendoza's convictions are not part of this appeal. *See Mendoza v. People*, S. Ct. Crim. No. 2010-0060, 2011 V.I. Supreme LEXIS 26 (V.I. Aug. 25, 2011).

[5] DeSilvia was also placed on supervised probation for one year for each count, ordered to perform one hundred hours of community service, and fined five hundred dollars ($500.00) for each count.

a trial court's denial of a Rule 29 motion *de novo. See Stevens v. People*, 52 V.I. 294, 304-05 (V.I. 2009).

## B. The People Sufficiently Established the Elements of a 14 V.I.C. § 795 Violation

■ DeSilvia argues that the Superior Court erred in denying his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29[6] because the People failed to sufficiently prove that Mendoza actually offered the vehicle registration and inspection lane checklist to be filed at the BMV. Alternatively, DeSilvia contends that the People failed to establish that the vehicle registration and inspection lane checklist were false because there was no evidence presented at trial that Mendoza's vehicle would not have passed inspection. These arguments misinterpret section 795 and the evidence presented at trial. For a defendant "[t]o be convicted as a principal for aiding and abetting in the commission of a crime, the government must prove two elements: (1) that the substantive crime was committed, and (2) that the defendant knew of the crime and attempted to facilitate it." *Francis v. People*, 52 V.I. 381, 386 (V.I. 2009) (quoting *Gov't of the V.I. v. Peters*, 121 F. Supp. 2d 825, 828 (D.V.I. App. Div. 1998)).

■ First, the People were required to establish the substantive crime. The elements of proof necessary to establish a violation of 14 V.I.C. § 795 are: 1) a person procured or offered a false or forged instrument to be filed, registered, or recorded in a public office in this territory; 2) the instrument, if genuine, was one which might be filed, registered, or recorded; and 3) the person knew that the instrument was false or forged. *Mendoza*, 2011 V.I. Supreme LEXIS 26, at *17-18. The People presented evidence that Mendoza went to the Commission on June 5, 2009 to obtain a business license to operate a safari taxi with the license plates and corresponding taxi medallion number 0456. While at the Commission, Wheatley discovered that Mendoza was in possession of a vehicle registration and inspection lane checklist from the BMV that indicated that a vehicle owned by Mendoza with the license plate number 0285 had been inspected on June 4, 2009 and that it was found to be roadworthy.

---

[6] Federal Rule of Criminal Procedure 29 is made applicable to the Superior Court through Superior Court Rule 7.

However, Mendoza had sold his license plates and corresponding taxi medallion number 0285 and deposited them with the Commission several months before, in December 2008. Moreover, Wheatley confirmed that on June 4, 2009, the 0285 license plates were still in the possession of the Commission. Officer Estrill also testified that on June 5, 2009, he went to Mendoza's residence and observed that Mendoza's safari was covered in soot, had flat tires, and appeared to be inoperable. Finally, George testified that DeSilvia admitted that he had never seen or inspected Mendoza's safari taxi prior to completing the vehicle registration and inspection lane checklist.

 This is sufficient evidence to allow a jury to find Mendoza guilty beyond a reasonable doubt of knowingly procuring false instruments under section 795. George's testimony that DeSilvia had admitted that he had never seen or inspected Mendoza's safari taxi prior to completing the vehicle registration and inspection lane checklist was sufficient to allow a reasonable jury to conclude that the vehicle registration and inspection lane checklist, which indicated that a vehicle owned by Mendoza and bearing the license plate number 0285 had been inspected on June 4, 2009, was false. Moreover, Wheatley's testimony that Mendoza physically deposited the 0285 license plates with the Commission when he sold the 0285 license plates and medallion in December 2008 would allow a reasonable jury to conclude that Mendoza knew the vehicle registration and inspection lane checklist were false. A jury could also reasonably infer from Mendoza's possession of the false vehicle registration and inspection lane checklist that he had procured those documents and that he had the intent to file them at the BMV.[7] *See United States v. Hall*, 632 F.2d 500, 502 (5th Cir. 1980) (holding defendant's possession of forged checks was sufficient to allow inference of his intent to deposit them); *People v. Rodriguez*, 71 A.D.3d 450, 897 N.Y.S.2d 42, 45 (N.Y. App. Div. 2010) (holding defendant's possession of fake IDs was sufficient to infer his intent to defraud or deceive). Finally, George's testimony that registering a safari taxi requires filing a host of documents with the BMV, including a vehicle registration and inspection lane checklist, sufficiently established that Mendoza's falsified vehicle

---

[7] This conclusion is supported by the fact that Mendoza was found in possession of these documents while attempting to obtain a business license, which was another instrument he needed to file with the BMV in order to register his safari taxi.

registration and inspection lane checklist, if genuine, might be filed with the BMV under the laws of the Virgin Islands. The People thus presented sufficient evidence to allow a reasonable jury to find that the substantive crime of procuring false instruments under section 795 was committed.[8]

██ Second, the People were required to prove that DeSilvia knew of the crime and attempted to facilitate it. "This requires that an individual have a 'purposive attitude' to see the venture succeed and must participate in the criminal endeavor at least to the point of encouraging the perpetrator and 'participate in it as something that he wishes to bring about . . . .' " *Francis*, 52 V.I. at 386 (quoting *Gov't of the V.I. v. Navarro*, 513 F.2d 11, 14-15, 11 V.I. 542 (3d Cir. 1975)). Here, DeSilvia admitted to George that he had completed the vehicle registration and inspection lane checklist that Wheatley had taken from Mendoza indicating that a vehicle bearing the license plate number 0285 had been inspected and was roadworthy. DeSilvia further admitted that he had never seen or inspected Mendoza's safari taxi prior to completing these documents. Relying on DeSilvia's admission to falsifying the vehicle registration and inspection lane checklist, and Mendoza's possession of the falsified instruments, the jury could have reasonably inferred that DeSilvia aided and abetted Mendoza in procuring the falsified vehicle registration and inspection lane checklist. And since these types of documents serve no purpose other than to register a vehicle with the BMV, the jury could also rationally conclude that DeSilvia knew that Mendoza intended to file these two falsified instruments at the BMV. *See Rodriguez*, 897 N.Y.S.2d at 45. Accordingly, there was sufficient evidence to allow the jury to convict DeSilvia as a principal for aiding and abetting Mendoza in procuring false instruments under title 14, section 795.[9]

---

[8] DeSilvia argues that since the People failed to prove that Mendoza actually offered these documents to be filed at window #2 — the place at the BMV where people actually file their vehicle registrations, inspection lane checklists, etc. — the People failed to establish that the substantive offense was committed. This argument misconstrues the statute. Section 795 does not require that a false or forged instrument actually be presented for filing. Rather, it states one must only knowingly *procure* or offer a false or forged instrument to be filed. *See* 14 V.I.C. § 795.

[9] DeSilvia argues that to establish that the instruments were false, the People were required to prove that the information on the inspection lane checklist was untrue, i.e. whether Mendoza's vehicle's horn worked, whether its brake lights worked, whether its windshield wipers worked, etc. First, this argument ignores the broad assertion DeSilvia made by com-

## C. The People Did Not Sufficiently Establish the Elements of 14 V.I.C. § 843(3)

DeSilvia also argues that the People failed to present sufficient evidence to convict him of 14 V.I.C. § 843(3). Specifically, he claims that the People failed to establish that Mendoza actually made a false or fraudulent statement or representation to any officer, department, board, commission, or other agency of the government of the Virgin Islands. We agree.

██ Section 843(3) imposes criminal penalties upon any person who "makes any false or fraudulent statements or representations . . . in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands." The People charged DeSilvia with aiding and abetting Mendoza in making a false or fraudulent statement or representation upon the government. Specifically, the People alleged that Mendoza violated section 843(3) by offering a vehicle registration and inspection lane checklist containing false representations for filing with the BMV, and that DeSilvia aided and abetted him in committing this crime by preparing these falsified documents.[10] Thus, the People were required to prove at trial that Mendoza 1) knowingly 2) made a false or fraudulent statement or representation 3) in a matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands. *Mendoza*, 2011 V.I. Supreme LEXIS 26, at *25. In addition, the People were also required to prove that DeSilvia knew of the crime and attempted to facilitate it.

In support of this allegation, the People relied on George's testimony describing the normal process of registering a safari taxi with the BMV. According to George:

> After coming through [the] Inspection Lane in the back, customers then come inside the building. And the first stop would be to Window

---

pleting and signing these documents, which is that he physically inspected Mendoza's safari taxi. Second, DeSilvia certified that the vehicle had the license plate number 0285, which was impossible as Wheatley testified that that license plate was physically located at the Commission at the time that the vehicle was purportedly inspected.

[10] While DeSilvia's actions may have violated other sections of the Virgin Islands Code, the People have only charged him with aiding and abetting Mendoza in procuring false documents and in making fraudulent claims upon the government.

#1, which is the Superior Court. At the Superior Court they check for any outstanding traffic tickets they may have. In this particular case, Mr. Mendoza had one traffic ticket which was paid in the amount of $85 on 6/4/09. . . . After Window #1 the Bureau of Motor Vehicles starts at Window #2. Window #2 is the window that you take in all the documents for processing.

(J.A. Vol. I 231-32.) The People contend that based on this testimony there was sufficient circumstantial evidence to allow the jury to infer that Mendoza had attempted to file the vehicle registration and inspection lane checklist at window #2, but was turned away for not having a business license. The People claim that this inference is further supported by Wheatley's testimony that Mendoza attempted to obtain his 2009 business license on June 5, 2009, which he needed to register his safari at window #2.

■■■■■ We previously held in *Mendoza*, 2011 V.I. Supreme LEXIS 26, at *27, that this was insufficient evidence to allow a rational jury to conclude that Mendoza offered the falsified vehicle registration and inspection lane checklist to be filed at window #2 of the BMV. Even assuming Mendoza went to window #1 and paid the outstanding traffic ticket, that in and of itself is not sufficient to allow a jury to reasonably infer that he then proceeded to window #2 after he paid the outstanding ticket.[11] *Id.* 2011 V.I. Supreme LEXIS 26, at *27. We concluded that it was equally as likely that Mendoza chose not to immediately proceed to window #2, waiting instead until after he had obtained his business license. While George testified that people normally proceed directly from window #1 to window #2 when they register a vehicle, the People presented no evidence that tended to suggest that Mendoza actually went to window #2. No witness from the BMV testified that Mendoza actually presented any documents at window #2. Instead, the People rely on circumstantial evidence that Mendoza went to window #1 to prove that he

---

[11] Window #1 is run by the Superior Court and is not actually part of the BMV, although it is located inside of the BMV building. Moreover, window #1 is not involved in the inspection and registration process, nor are any documents filed, registered, or recorded at that window. Window #1 only involves record checks for outstanding traffic liens on vehicles.

also went to window #2.[12] Concluding that Mendoza went to window #2 based solely on evidence that he had gone to window #1 would be nothing more than mere speculation or conjecture. *See People v. Clarke*, S. Ct. Crim. No. 2009-0104, 2011 V.I. Supreme LEXIS 11, at *17 (V.I. April 12, 2011) (holding evidence must rise above mere speculation); *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996) ("[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference."). Accordingly, because the People failed to prove that the substantive crime was committed, DeSilvia cannot be convicted as a principal for aiding and abetting in the commission of that crime. The trial court therefore erred in denying DeSilvia's motion for judgment of acquittal with regard to his charge of violating 14 V.I.C. § 843(3).

## D. The Prosecutor's Comment During Closing Arguments

During closing arguments the prosecutor made the following statement to the jury: "Why are we beating up on this poor little dollar-ride guy here? It's not about that. This involves human health and safety. *On any given day at 3:00 o'clock you see school children on the safari's; you see mothers taking their kids.*" (J.A. Vol. II at 63.) (emphasis added). DeSilvia immediately objected, but the court overruled his objection. Once closing arguments had concluded and the jury was no longer present, DeSilvia renewed his objection and moved for a mistrial, claiming the prosecutor's comment prejudicially inflamed the passions of the jury. The trial court agreed that the prosecutor's comment was probably improper, but declined to grant a mistrial and stated:

> I will instruct the jury, without directing them to any particular com-
> ments, because I think at this point directing them to any particular
> comment would just emphasize it. I will emphasize over and over
> again during my charge not to be influenced by any sympathy, or preju-
> dice, or bias during the jury verdict, that it will be a violation of their
> oath to do so.

[12] Because on June 5, 2009, Mendoza was in possession of the falsified vehicle registration indicating that on June 4, 2009, someone had paid an outstanding traffic ticket that he had, a jury could reasonably infer that Mendoza had paid the outstanding ticket.

(J.A. Vol. II at 68.) DeSilvia further requested a specific curative instruction, but the trial court denied his request.[13] DeSilvia now argues that the trial court erred by not granting him a mistrial based on the prosecutor's comment during the People's closing arguments. Alternatively, he contends that the trial court's failure to give a curative instruction to the jury after the People's closing argument constitutes reversible error.

██ ██ Determining whether a prosecutor's comment creates reversible error is a two step analysis. First, we must evaluate whether the statement was improper. *See United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007). Second, we must determine whether the improper statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). For a prosecutor to appeal to the emotions, passions, and prejudices of a jury is improper because it diverts the jury's attention from its duty to decide the case on the evidence. *See State v. Rizzo*, 266 Conn. 171, 833 A.2d 363, 418 (2003); *see also United States v. Modica*, 663 F.2d 1173, 1180 (2d Cir. 1981). "When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." *Rizzo*, 833 A.2d at 418. DeSilvia was charged with procuring false instruments and making fraudulent claims upon the government because the People believed that he had assisted Mendoza in attempting to register his safari taxi with the BMV without actually having the vehicle physically inspected to determine if it was roadworthy. The prosecutor's comment that school children, as well as mothers and their kids, use safari taxis daily diverted the jury's attention from determining whether the People had proved each element of each offense beyond a reasonable doubt and focused it on the vulnerable women and children that may have fallen victim to DeSilvia's actions. By making this statement during his closing arguments, the prosecutor appealed to the emotions of the jurors and invited them to decide this case on the basis of irrelevant factors which would interfere with their rational consideration of the evidence. *See id.* The prosecutor's comment during closing arguments was thus improper.

---

[13] Although DeSilvia requested a specific curative instruction, he noted that even that was insufficient and a mistrial was required.

 Next we must determine whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008) (internal quotation marks omitted). In making this determination, we "must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). "The touchstone of our inquiry is 'not the culpability of the prosecutor, but the fairness of the trial.' " *United States v. Liburd*, 607 F.3d 339, 344, 53 V.I. 890 (3d Cir. 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)). Since we have already determined that there was insufficient evidence to sustain DeSilvia's conviction for making fraudulent claims upon the government, our analysis will focus solely on his conviction for procuring false instruments.

 To begin, although the prosecutor's comment was improper, it was not manifestly egregious.[14] Moreover, the statement was brief and isolated, encompassing only two sentences of the prosecution's entire closing argument. *See United States v. Weatherly*, 525 F.3d 265, 273 (3d Cir. 2008) (relying on fact that improper statements were brief and isolated in finding they were not prejudicial); *United States v. Wood*, 486 F.3d 781, 789 (3d Cir. 2007) (same). During final jury instructions the trial court also thoroughly instructed the jurors that they must base their verdict on only the evidence presented, and that "[u]nder no circumstances should [their] deliberations be affected or diverted by any appeals to bias, passion, or prejudice, or influenced by any pity or sympathy."[15] (J.A. Vol. II at 106.) *See Mulley v. People*, 51 V.I. 404, 415

---

[14] George testified that one of the reasons that all vehicles must go through the inspection process at the BMV is to protect the safety of Virgin Islands residents and visitors by keeping unsafe vehicles off the public roads. She further testified that the vehicle inspection process is especially important for safari taxis and other vehicles for hire that Virgin Islands residents and visitors use for transportation.

[15] The trial court went on to state that "[t]he law does not permit jurors to be governed by sympathy, prejudice, or public opinion. In every respect, your judgment should be considered, deliberate, and objective, deriving its force and validity from the facts and inferences reasonably and logically supported by the testimony." (J.A. Vol. II at 106.) The trial court also explained to the jury that they had "been chosen and sworn as jurors in this case to try the

(V.I. 2009) ("[A]lthough the [trial court] did not issue an immediate specific curative instruction, its general instruction reduced any prejudice from the improper remarks in the People's closing argument."); *Wood*, 486 F.3d at 789; *Weatherly*, 525 F.3d at 273. *See generally Gov't of V.I. v. Rosa*, 399 F.3d 283, 297 (3d Cir. 2005) ("[W]e must assume that juries for the most part understand and faithfully follow instructions." (quoting *Connecticut v. Johnson*, 460 U.S. 73, 85 n.14, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983))). Finally, as discussed in detail above, the People presented overwhelming evidence establishing DeSilvia's guilt beyond a reasonable doubt as to the charge of violating 14 V.I.C. § 795. We therefore find that the prosecutor's improper statement constituted harmless error and did not deprive DeSilvia of a fair trial. *See Mulley*, 51 V.I. at 415-16; *Moore*, 255 F.3d at 113 ("When the evidence is strong, and the curative instructions adequate, the Supreme Court has held the prosecutor's prejudicial conduct does not deprive a defendant of a fair trial.").

## III. CONCLUSION

There was sufficient evidence presented at trial to allow a rational jury to find DeSilvia guilty beyond a reasonable doubt of violating title 14, section 795, and the prosecutor's improper statement during closing arguments was harmless. There was, however, insufficient evidence to sustain DeSilvia's conviction for aiding and abetting Mendoza in making fraudulent claims upon the government pursuant to title 14, section 843(3). Therefore, DeSilvia's conviction for procuring false instruments is affirmed, while his conviction for making fraudulent claims upon the government is reversed.

---

issues of fact. You are to perform this duty without bias, without sympathy, and without prejudice." (J.A. Vol. II at 106.)