# JEAN CLIFTON CONNOR, JR., Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Crim. No. 2011-0021

Supreme Court of the Virgin Islands

July 2, 2013

KELE C. ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant*.

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN, *Associate Justice*, concurring in part and dissenting in part.

## OPINION OF THE COURT

(July 2, 2013)

HODGE, *Chief Justice*. Jean Clifton Connor appeals from a March 16, 2011 Judgment and Commitment of the Superior Court of the Virgin Islands, adjudging him guilty of four counts, including robbery in the first degree, using a dangerous weapon during the commission of robbery in the first degree, grand larceny, and using a dangerous weapon during the commission of a grand larceny.[1] For the reasons that follow, we affirm.

## I. RELEVANT FACTS AND PROCEDURAL POSTURE

On September 28, 2010, Danton Choute was in his residence in the Hospital Ground area of St. Thomas. (J.A. 47.) At about noon, he heard

---

[1] Respectively, V.I. CODE ANN. tit. 14, §§ 1861, 1862(2), 2251(a)(2)(B), 1081, 1083(1), and 2251(a)(2)(B).

a knock on the door. (*Id.*) He looked outside, and saw a young man whom he recognized because he had seen the individual "maybe one thousand times" over "four or five years," cleaning for Choute's landlord, Carmen Sanchez Bennett (also referred to as "Ms. Carmello"). (J.A. 47, 56-57.) The man told Choute that he had come to do some cleaning and painting for Ms. Carmello. (J.A. 48.) Choute responded that he was going to call the landlord to verify the information, and turned back inside to retrieve his cell phone from his table. (*Id.*) The man then entered his room, over Choute's protests, and started looking around. (J.A. 48-49.) Choute had an unopened box containing a laptop computer on his table that he planned to send to his daughter in New York, and the intruder grabbed the laptop and began to quickly leave the home. (J.A. 49.) Choute tried to stop the man, but the intruder lifted his shirt to show Choute a firearm in the waistband of his pants, and told Choute that if he tried to stop him, he would shoot Choute. (J.A. 49-50.) The intruder left. Choute identified Connor as his intruder in a photo array at the police department, and also identified him at trial. (J.A. 76, 53-54.)

Connor denied being on Choute's property on September 28, 2010, and presented an alibi defense that he was working at his father's bar at Coki Point on that day. (J.A. 94.) However, the People had admitted as evidence a statement Connor apparently gave to the police after he was arrested, which indicated that he was at or near Choute's property on September 28, 2010. (J.A. 103.) At trial, Choute testified that the computer cost him $486.00, and with its case, the total cost was $500. (J.A. 54.)

After a one-day trial, which was conducted on February 9, 2011, the jury found Connor guilty of robbery in the first degree, using a dangerous weapon during the commission of robbery in the first degree, using a dangerous weapon during the commission of assault in the first degree, grand larceny, and using a dangerous weapon during the commission of grand larceny. The jury acquitted Connor of assault in the first degree, and when the trial court entered a judgment of conviction on March 16, 2011, it dismissed with prejudice the corresponding charge of using a dangerous weapon during the commission of assault in the first degree. (J.A. 12, 14.) Furthermore, the court deemed the grand larceny charge as merged with the robbery in the first degree conviction, and did not impose a separate sentence thereon. (J.A. 13.) Connor filed a timely notice of appeal on March 11, 2011.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This court has jurisdiction of this appeal from the final judgment of the Superior Court entered on March 16, 2011. V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's March 16, 2011 Judgment and Commitment is a final judgment, this Court has jurisdiction to consider Connor's appeal. *See, e.g.*, *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (holding that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)); *Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012) (same).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd* 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Where an appellant fails to object to a Superior Court order or decision, we review for plain error. V.I.S.CT.R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

### B. Sufficiency of the Evidence

 Connor argues that there was insufficient evidence to prove that he was the person who stole Choute's laptop, particularly because the People had only one eyewitness. We find this argument meritless. Here, the eyewitness knew Connor for years and was able to identify him in a photo array and during trial as the man who entered his apartment and stole his laptop. (J.A. 76, 53-54.) Connor urges us to disregard this evidence because, he argues, eyewitness identifications are unreliable. (Appellant's Br. 25.) But "[i]f trustworthy, a single positive eyewitness identification may be sufficient proof of guilt, even if it is contradicted by the accused or by alibi testimony . . . ." 29A AM. JUR. 2D *Evidence* § 1402 (2012); *see also United States v. Bamberger*, 456 F.2d 1119, 1127 n.4 (3d Cir. 1972) (" '[I]t is well established at common law . . . that ordinarily the testimony of one eyewitness is sufficient for the purpose of identification of the perpetrator of the crime.' ") (quoting *United States v. Levi*, 405 F.2d 380, 382 (4th Cir. 1968)); *see also United States v. Smith*,

49 F.3d 475, 478 (8th Cir. 1995) (finding evidence provided by a single eyewitness to be adequate). Here, Choute did not hesitate to identify Connor, a man he knew from previous interactions, and there is nothing to suggest that his vision or other observational senses were at all compromised at the time. While Connor attempted to offer alibi evidence, suggesting that he was at Coki Point Beach "the whole day," (J.A. 98), he could offer no corroborating evidence to support this defense, and the statement he provided to police contradicted this testimony. (J.A. 98, 100-02.) Therefore, we find there was sufficient evidence of his guilt.

■ As a related issue, Connor argues that there was no evidence he ever "used" a firearm during the larceny, because (1) it was alleged only that he displayed the firearm in his waistband, but did not use it, and (2) even if that display constituted "use", the display of the gun took place only after "the crime of larceny was complete." (Appellant's Br. 24-25.) However, nothing in section 2251 requires that a defendant actually *use* a weapon. Instead, section 2251(a)(1) punishes the mere possession of a certain class of weapons, while section 2251(a)(2) prohibits the possession of another class of weapons, including dangerous or deadly weapons, if they are possessed "with the intent to use the same unlawfully against another."[2] *Nanton v. People*, 52 V.I. 466, 477 (V.I. 2009) (recognizing that the intent requirement is an essential element of a violation of section 2251(a)(2)). Section 2251(a)(2)(B) provides a greater punishment if the dangerous or deadly weapon is had, possessed, borne, transported, carried or under the defendant's control during the commission or attempted commission of a crime of violence. Again, nothing in the statute requires that a defendant actually use the weapon during the commission or attempted commission of a crime of violence.

---

[2] Connor, in the briefest and most perfunctory manner, makes mention of the sufficiency of the evidence on the "intent" requirement. His opening brief states that, "[E]ven if [Connor] had [the firearm], it was hidden under his waist[band] and was not intended to be used for the larceny which occurred in the home." (Appellant's Br. 25.) However, assuming that this statement was sufficient to raise the issue on appeal, despite its lack of substantial argument or citation to authority, there was sufficient evidence for a reasonable jury to find that Connor intended to use the firearm unlawfully against another. Choute testified that Connor displayed the weapon in a threatening manner in order to facilitate his escape, and in fact told Choute he would kill him if he did not let him go, and the jury could have determined that Connor used the gun by displaying it to facilitate his escape with the property and intended to use it against Choute if Choute continued to block his egress. Consequently, even if this argument had been properly raised, it would not afford Connor any relief.

As to Connor's temporal argument, it must first be noted that the charged larceny was not complete at the time that Connor picked up Choute's laptop. Instead, larceny is "the unlawful taking, stealing, carrying, leading or driving away the personal property of another," 14 V.I.C. § 1081, and requires, in addition to a taking, the "carrying away (asportation) of another's property." *Nugent v. Ashcroft*, 367 F.3d 162, 177 (3d Cir. 2004). In this case, there is evidence that Connor possessed his firearm during the entire larceny, from the initial seizure of the laptop, through his escape with the property. Consequently, this argument fails.

## C. Double Jeopardy[3]

As his first and third issues on appeal, Connor argues that the People violated his right against Double Jeopardy[4] because they charged two crimes — robbery in the first degree and possession of a firearm during the commission of a robbery first degree — when in reality they constituted the same offense.

■ However, the United States Court of Appeals for the Third Circuit has previously rejected the very argument Connor presents. In its 1983 decision in *Government of the Virgin Islands v. Soto*, 718 F.2d 72, 78, 19 V.I. 642 (3d Cir. 1983), the Third Circuit clearly stated that the Legislature intended to authorize multiple punishments when it enacted section 2251(a)(2)(B), which prohibits the use or possession of a deadly or dangerous weapon during the commission of a crime of violence. *See also In the Interest of S.T. v. People*, 51 V.I. 420, 437 (2009) (Swan, J., dissenting) (applying *Soto*). In *Soto*, the Third Circuit considered the United States Supreme Court's synthesis of this aspect of the Double Jeopardy doctrine as set forth in *Missouri v. Hunter*, 459 U.S. 359, 365-69, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983), discussing the

---

[3] The Double Jeopardy prohibition found in the Fifth Amendment to the U.S. Constitution applies to the Virgin Islands by virtue of Section 3 of the Revised Organic Act. 48 U.S.C. § 1561 (2006). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1).

[4] Connor couches his first argument as one of multiplicity of charges, rather than explicitly referencing Double Jeopardy. "A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause." *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992). It is clear, then, that both his first argument regarding multiplicity and his third argument regarding Double Jeopardy are really one and the same.

application of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) and related decisions on these issues. The Third Circuit plainly concluded that "section 2251(a)(2)(B) continues to authorize cumulative punishments when robbery, whatever the degree, is committed with a dangerous weapon." *Soto*, 718 F.2d at 78.

In his Reply Brief, Connor argues that *Soto* was wrongly decided. The Third Circuit stated in *Soto* that the Legislature was "clearly aware that certain of the 'crimes of violence' to which section 2251(a)(2)(B) applies . . . were themselves defined or categorized by use of a dangerous weapon." As an example, the court in *Soto* referenced the crime of assault in the first degree. 14 V.I.C. § 297(2). It noted that assault committed "with a deadly weapon" constitutes the offense of assault in the first degree, and because it is a crime of violence, it is also one of the crimes for which a possessor of a firearm may be convicted under 2251(a)(2)(B). *Soto*, 718 F.2d at 78-79. The Third Circuit reasoned then that because the Legislature was punishing the corresponding crime of possession of a deadly weapon during the commission of the crime of violence, along with the primary offense of committing the crime of violence itself, its intention to punish two offenses from the same act was clear. *Id.*

■ Connor argues that the Third Circuit erred, and thus he suggests that *Soto* was wrongly decided, because it quoted the first-degree assault statute as referencing "a deadly or dangerous weapon," while the statute actually only mentions a "deadly weapon." 14 V.I.C. § 297(2). This argument is unavailing. First, *Soto*'s reasoning is not limited to its first-degree assault analogy;[5] instead, *Soto* noted that "the Virgin Islands legislature explicitly authorized cumulative punishment." 718 F.2d at 79. And the Third Circuit was right: section 2251(a)(2)(B) provides that the "penalty shall be *in addition to* the penalty provided for the commission

---

[5] Even if *Soto* relied only on its reference to assault in the first degree, and not also on the specific language in section 2251(a)(2)(B), its conclusion would still not be erroneous. Although the Third Circuit quoted the statute incorrectly, it was correct that the Legislature had no difficulty punishing both the crime of violence of assault in the first degree — which requires possession of a deadly weapon — and the possession of the deadly weapon itself during the assault. Because it clearly intended to punish the primary crime and the corresponding possession charge, the Legislature expressed its intent to impose multiple punishments when the crime involves a violation of 2251. The fact that the Third Circuit said "deadly or dangerous weapon," rather than "deadly weapon" alone does not alter this analysis. We decline, therefore, to accept Connor's invitation to "ignore" *Soto*. (Reply Br. 6.)

of, or attempt to commit, the crime of violence." 14 V.I.C. § 2251(a)(2)(B) (emphasis added). As the Third Circuit correctly concluded, this statutory statement indicates that the Legislature clearly intended to impose multiple punishments, 718 F.2d at 79, and where it does so, it does not violate the Double Jeopardy Clause. *See Hunter*, 459 U.S. at 367-68 (noting that the *Blockburger* test often used in Double Jeopardy analysis is a "rule of statutory construction," but it does not apply where clear expressions of legislative intent indicate a desire to impose multiple punishments, and in such cases, there is no constitutional violation) (citing *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)).

Connor argues in his Reply Brief that the language in section 2251(a)(2)(B) is not the relevant expression of legislative intent. (Reply Br. 5.) Instead, he urges this Court to consider section 104 of title 14. Section 104 states that

> [a]n act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

14 V.I.C. § 104.

This Court recently addressed the interaction between section 104 and section 2251 of Title 14. *Ward v. People*, 58 V.I. 277 (V.I. 2013). For the same reasons that we rejected the appellant's section 104 challenge to a conviction pursuant to section 2251 in *Ward*, 58 V.I. 277, we conclude that section 104 offers Connor no relief, and this argument too must fail.

### D. A Firearm is a Dangerous Weapon

Connor argues that a firearm is not a dangerous weapon and that his conviction for possessing a firearm during the commission of a robbery should be overturned. (Appellant's Br. 13 ("Obviously, a gun is not a dangerous weapon under" section 2251).) Section 2251 prohibits the use or possession of a "dangerous or deadly weapon" during the commission of crimes of violence, including robbery. 14 V.I.C. § 2251(a)(2). In this case, the trial court instructed the jury regarding deadly weapons (but not dangerous weapons), stating that "[a] deadly weapon is an object that is

used or may be used in such a manner that it is calculated to or likely to produce death or serious bodily harm. Whether an object is a deadly weapon depends on the essential character of the object and the manner in which it is used." (J.A. 159.)

Connor notes that the Information charges him with using a "dangerous weapon," while the trial court instructed the jury on the definition of a "deadly weapon" but not a "dangerous weapon." He argues that this variance violated his rights. Furthermore, he argues that a firearm is not a dangerous weapon within the meaning of section 2251, because it is unlike the other kinds of weapons described in that provision.[6]

■ Both of these arguments fail. First, it does not appear that Connor ever challenged either the Information or the jury instructions below, so this Court would review only for "plain error." Here, there was no error. The Court need not decide whether all dangerous weapons are also deadly weapons; but surely deadly weapons are also dangerous. As the Third Circuit defined it, a deadly weapon

> is one which, from the manner used, is calculated or likely to produce death or serious bodily injury. Thus whether a weapon is deadly depends on two factors: (1) what it intrinsically is and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill.

*Gov't of the V.I. v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994).

■ A firearm is a weapon that is calculated to produce death and serious bodily injury. *See United States v. Glover*, 558 F.3d 71, 81 (1st Cir. 2009) (noting that a firearm is a "classic example" of a weapon "designed and constructed to produce death or great bodily harm"). Furthermore, it can be used in a way that is calculated to kill. Therefore, we have no difficulty concluding that a firearm is a "deadly weapon."[7] And because the trial court's instructions as described above on the definition of a

---

[6] The statute provides examples of weapons that would violate section 2251, including "blackjack, billy, sandclub, metal knuckles, bludgeon, switchblade knife or gravity knife or electric weapon or device," or "a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon." 14 V.I.C. § 2251(a)(1), (a)(2).

[7] We need not and do not reach the question of whether a firearm that is inoperable may be a deadly or dangerous weapon.

deadly weapon are consistent with the *Robinson* definition, they were not in error.

 Furthermore, because a firearm is "calculated or likely to produce death or serious bodily injury," it is not only deadly, but it is also, by definition, dangerous.[8] Finally, any variance between the Information's reference to a "dangerous" weapon and the instruction's reference to a "deadly" one is of no moment, because the change in terminology required the People to prove more than what was charged — that is, they had to prove that the weapon was not simply dangerous but was also deadly. That variance then could not have prejudiced Connor, and therefore could not constitute "plain error."

### E. Verdict Forms

The People charged Connor with grand larceny by taking away the personal property of another valued in excess of one hundred dollars with the intent to permanently deprive Choute of it, in violation of sections 1081 and 1083(1) of title 14. (J.A. 15-17.)[9] The jury returned general verdict forms finding Connor guilty of grand larceny. (J.A. 200.) Connor now argues that his conviction should be vacated because title 5, section

---

[8] There is no definition in the Code of a dangerous weapon. But the Legislature has instructed us that in the absence of a statutory definition, "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." V.I. CODE ANN. tit. 1, § 42; *see also* THOMAS JEFFERSON, THE JEFFERSONIAN CYCLOPEDIA 482 (John P. Foley ed., Funk & Wagnalls Co. 1900) ("Laws are made for [people] of ordinary understanding and should, therefore, be construed by the ordinary rules of common sense. Their meaning is not to be sought for in metaphysical subtleties which may make anything mean everything or nothing at pleasure.") The Merriam-Webster dictionary defines "dangerous" as "able or likely to inflict injury or harm," and Black's Law Dictionary defines it as "likely to cause serious bodily harm." BLACK'S LAW DICTIONARY 451 (9th ed. 2009). Any instrumentality that is deadly — that is, "calculated or likely to produce death or serious bodily injury" — is also dangerous — that is, "able or likely to inflict injury or harm" or "likely to cause serious bodily harm." By definition, then, a deadly weapon is also a dangerous one. Moreover, we do not accept Connor's contention that section 2251 "defines dangerous weapons," (Appellant's Br. 26); rather, it simply provides a non-exhaustive list of some weapons that violate 2251, which includes any deadly or dangerous weapon.

[9] Title 14, section 1083 defines the offense of grand larceny:

Whoever takes property-
(1) which is of $100 or more in value; or
(2) from the person of another
commits grand larceny and shall be imprisoned for not more than 10 years.

3636, of the Virgin Islands Code required that the jury verdict forms specify the value of the stolen property.

█ Under section 3636, "[w]hen an information charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained." 5 V.I.C. § 3636. Thus, the plain language of section 3636 requires the jury to declare in its verdict the value of the stolen property. This interpretation of section 3636 is consistent with that of other jurisdictions considering statutes with identical language. *See Hogoboom v. State*, 120 Neb. 525, 234 N.W. 422, 424 (1931); *State v. Weekly*, 76 Ohio App. 199, 63 N.E.2d 558, 559 (1945); *Harris v. State*, 635 P.2d 1165, 1168 (Wyo. 1981).

█ Accordingly, the jury was required to declare the value of Choute's stolen property in its verdict, and its failure to do so constitutes error. However, Connor failed to object to this omission at trial. Thus, before this Court reverses the trial court, we must find that the complained-of error is plain and affects substantial rights.[10] *See Phipps*, 54 V.I. at 546. Moreover, we must find that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

As noted above, it is clear from the record that the jury failed to determine the value of the stolen property. This failure violates the plain language of section 3636. The jury's failure to declare the value of the stolen property, however, did not affect any substantial right. In Ohio, which had a very similar statute, courts faced with a similar question determined that the defendant must show that he is prejudiced by the failure of the jury to articulate a value of the property. *See, e.g., State v. Park*, 174 Ohio St. 81, 186 N.E.2d 736, 737-38 (1962); *State v. Ridgeway*, 35 Ohio App. 2d 254, 301 N.E.2d 716, 717 (Ohio Ct. App. 1972). In *Ridgeway*, the Ohio Court of Appeals noted that since "[t]he evidence clearly shows the value of the property stolen in this case to have exceeded [the statutory amount]" and since "[n]o objection was made

---

[10] Indeed, in other contexts we have held appellants to the "plain error" standard, even where the trial court allegedly failed to comply with a statute, so long as the appellant failed to object below. *See, e.g., Ramirez v. People*, 56 V.I. 409, 422 n.6 (V.I. 2012) (declining to examine whether the Superior Court's decision to admit evidence of a confession violated a local statute, 5 V.I.C. § 932(6), because the defendant, having failed to raise the statute below or on appeal, would be subject to the "plain error" standard, which he could not meet).

either to the form of the verdict or to the instructions of the court," the fact that the form of the verdict was "technically incorrect," would not require reversal since the defendant had "not shown that he was in anywise prejudiced by this irregularity." *Id.* Similarly, in *Park*, the Ohio Supreme Court found no prejudice where the defendant conceded the value of the goods. 186 N.E.2d at 737-38.

 Indeed, Connor makes no attempt to show how his substantial rights were violated by the failure to specify a value, nor does he contest below or on appeal that the computer was worth more than $100. There is no question that the jury was properly instructed that it must find beyond a reasonable doubt that the value of the property exceeded $100 in order to return a conviction on the grand larceny charge, and, subsequent to that instruction, the jury did find that the element was proven beyond a reasonable doubt. (J.A. 159.) Accordingly, the jury's failure to declare the value of the property did not affect Connor's substantial rights.[11]

### F. Prosecutorial Misconduct

Connor urges this Court to reverse his conviction because, he argues, the trial court improperly denied his motion for a mistrial after the prosecutor asked an improper question during the trial. Connor testified in his own defense, and on cross-examination, the prosecutor asked him, "Isn't it true that your mother made a promise to Mr. Choute to pay for

---

[11] While the dissent — in Section IV.E. — agrees that there was an error that was plain, it appears to disagree with the Court's conclusion that the error did not affect Connor's substantial rights. It would certainly affect substantial rights if some element of an offense was not submitted to a jury or was not proven, as the dissent suggests; however, in this case, the jury was instructed that they could not find Connor guilty of grand larceny unless they found the value was worth more than $100, and, after this instruction, they did find him guilty beyond a reasonable doubt. Furthermore, we have never held that the mere fact that a statute was violated means that a party's substantial rights were violated. Where a statute is violated — indeed, even where the Constitution itself is violated — an appellant must ordinarily establish each factor of the plain error test if he failed to raise his objection below. *See, e.g., Malone v. People*, 53 V.I. 408, 417 (V.I. 2010) (noting that, "as a general rule, an appellate court will not consider a constitutional argument raised for the first time on appeal, unless the error is plain," and further explaining that the error must "affect the substantial rights of the Appellant"). Here, the fact that the statute was violated merely shows that there was a plain error, but because the jury had to have found the value of the property was worth more than $100 to convict Connor of grand larceny, he has not demonstrated that the failure to declare the value on a verdict form prejudiced him.

the computer? Are you aware of that?" (J.A. 108.) Connor immediately objected and requested a mistrial. (*Id.*) The court sustained the objection, overruled the mistrial request, and instructed the jury to "disregard the question." (*Id.*)

Because Connor lodged a contemporaneous objection, we review for abuse of discretion. *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012) (noting that evidentiary rulings are reviewed for abuse of discretion, unless the ruling involves the application of a legal precept); *In re Kendall*, S. Ct. Misc. No. 2009-0025, 2010 V.I. Supreme LEXIS 73 (V.I. July 16, 2010) (unpublished) (noting that denials of motions for mistrial are reviewed for abuse of discretion). If the prosecutor did engage in misconduct, we will reverse unless the error is harmless. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003); *see also DeSilvia v. People*, 55 V.I. 859, 873-74 (V.I. 2011) (refusing to reverse because the prosecutor's comments constituted harmless error). Under the harmless error analysis, "[i]f the error is constitutional, we will affirm [only] if we find that the error is harmless beyond a reasonable doubt," while "if the error is non-constitutional, we will affirm when it is highly probable that the error did not contribute to the judgment." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000) (internal quotation marks omitted).

Here, the question was arguably improper. Rule 408 of the Federal Rules of Evidence[12] prohibits the very type of evidence the prosecutor was attempting to solicit: testimony that a party offered to pay a claim in an attempt to compromise it, when offered to prove either the amount or validity of that claim. *See United States v. Davis*, 596 F.3d 852, 859, 389 U.S. App. D.C. 282 (2010) (prohibiting evidence that a defendant offered to settle with a private party, where that evidence was admitted to prove the criminal defendant's "guilt, or in the words of Rule 408(a), his 'liability' "); *see also People v. Brewley*, 49 V.I. 137, 144-47 (V.I. Super. Ct. 2007) (finding inadmissible evidence of an attempt to pay restitution to a private party in order to compromise a claim of embezzlement and larceny). We need not in this case, however, determine the application of Rule 408 to bar proof of offers of restitution made by family members, as opposed to the defendant himself, or the probative value of such evidence.

---

[12] *Blyden v. People*, 53 V.I. 637, 658 n.15 (V.I. 2010) (noting that the Legislature adopted the Federal Rules of Evidence by way of Act No. 7161, § 15, which became effective on April 7, 2010), *aff'd* 437 Fed. Appx. 127 (3d Cir. 2011).

 Assuming for purposes of this opinion that the prosecutor's question was improper under Rule 408 standards, the effect of that question was harmless, and it was not an error for the trial court to deny the motion for a mistrial. As discussed above, when we consider non-constitutional errors,[13] such as the one here presented, we will affirm when it is highly probable that the error did not contribute to the judgment. *Helbling*, 209 F.3d at 241; *see also Smith v. People*, 55 V.I. 957, 963 (V.I. 2011) (applying this standard in the context of an evidentiary ruling). Given the strong evidence of Connor's guilt[14] and the fact that the question was not answered, as well as the trial court's prompt admonition to the jury to disregard the question (J.A. 108), and the final instruction that the jury must not consider attorneys' questions as evidence (J.A. 146), which we may presume that the jury followed, *see Augustine v. People*, 55 V.I. 678, 686 (V.I. 2011) (quoting *United States v. Liburd*, 607 F.3d 339-344, 53 V.I. 890 (3d Cir. 2010)), it is highly probable that the prosecutor's questions did not contribute to Connor's guilty verdict. *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (indicating that under the harmless error standard, courts should "examine the prosecutor's offensive actions in context and in light of the entire trial, assess[] the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant"). Therefore, the error was harmless.

## III. CONCLUSION

There was sufficient evidence for a rational[15] jury to find that Connor committed the offenses of which he was convicted. Because the Legislature clearly intended to punish multiple offenses when it enacted the statute prohibiting the use or possession of dangerous or deadly weapons during the commission of crimes of violence, Connor suffered no Double Jeopardy violation. Furthermore, a firearm, which is a deadly weapon, is also by definition a dangerous one, and thus the trial court's

---

[13] The error relied upon here was not constitutional, as the evidentiary rule it violated was established to encourage, as a matter of policy, compromises and settlements, rather than to protect any constitutional rights. *Davis*, 596 F.3d at 859 ("The policy embodied in the Rule is to foster compromises.").

[14] *See supra* Section II.B.

[15] *See Christopher v. People*, 57 V.I. 500, 514 (2012).

firearms instructions were not in error. Although the court erred by permitting the jury to submit verdict forms that did not state the value of the stolen property, this error did not affect Connor's substantial rights, because the trial court merged the grand larceny conviction with the first-degree robbery conviction, and did not impose a separate sentence for it. Connor's substantial rights were also unaffected by the prosecutor's improper questions of Choute on cross-examination. For all of these reasons, we affirm the March 16, 2011 Judgment and Conviction.[16]

SWAN, *Associate Justice*, concurring in part and dissenting in part.

The Appellant, Jean Clifton Connor ("Connor"), was convicted of four counts in an information, which included first degree robbery and grand larceny. Because I believe the trial court committed plain error by ignoring a statutory requirement for a conviction of grand larceny, Appellant's grand larceny conviction should be reversed.

## I. FACTS AND PROCEDURAL HISTORY

At approximately noon on September 28, 2010, Danton Choute ("Choute") was at his residence in the Hospital Ground area of St. Thomas preparing for a flight to Puerto Rico the same day, when he heard a knock at his door. At the door was Connor, whom Choute recognized as

---

[16] Because Connor failed to raise it on appeal, we will not address at length the question of whether the trial court erred by permitting Elfreda Robinson, the supervisor of the Police Department's Firearms Licensing Division, to testify regarding a Certificate of Contents of Official Record that had been prepared not by Robinson, but by her colleague on St. Croix. Connor objected below on Confrontation Clause grounds pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and its progeny, but the trial court decided that the certificate was not testimonial. (J.A. 72-73.) We note that after the trial in this issue, and after the matter was already on appeal, the Third Circuit has made it clear that certificates stating that there is no record in existence indicating that the defendant is licensed to possess a firearm are indeed testimonial in nature, and if they are admitted through a witness who did not prepare the certificate, they violate the defendant's Confrontation Clause rights. *Gov't of the V.I. v. Gumbs*, 426 Fed. Appx. 90, 94 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1033, 181 L. Ed. 2d 761 (2012). However, Connor has failed to raise this issue on appeal and has therefore waived it. *Bernhardt*, 51 V.I. at 346 (explaining that issues not raised on appeal or argued in the appellant's brief are waived). It is not clear, though, why the People presented, or why the trial court accepted, evidence regarding Connor's lack of authorization to own a firearm, as that is not an element of any of the crimes with which he was charged. *See* 14 V.I.C. § 2251(a)(2) (containing no requirement to prove that the weapon is possessed without authorization, instead requiring proof that the individual possessed it with an intent to use it).

a young man that occasionally did maintenance chores on the property for Choute's landlord. (J.A. at 47.) When Choute inquired of Connor as to what he wanted, Connor informed Choute that Choute's landlord had sent him to do some work on the property. (*Id* at 47.) Because his landlord had not informed Choute, as was customary, that work would be done that day on his rental unit, Choute told Connor to wait at the door while Choute called his landlord to confirm Connor's statement. (*Id.* at 48.)

As Choute attempted to locate his mobile phone, Connor entered the residence. (*Id.*) Choute vexingly demanded of Connor, "what you doing into my room [sic], who give you authorization to come in?" (.) Connor did not respond, but instead looked intently around Choute's apartment. (*Id.* at 49.) Choute ordered Connor to immediately leave his apartment. When Connor failed to leave, Choute attempted to retrieve his mobile phone to call 911. (*Id* at 48.) At that moment, Connor observed an unopened box purportedly containing a new laptop computer on a nearby table that Choute had recently bought as a high-school graduation gift for his daughter in New York. (*Id* at 49.) Connor seized the computer and hastily exited Choute's apartment (*Id* at 49.) Choute bellowed "man, where [are] you going," and began to pursue Connor. (*Id.*) When Choute attempted to prevent Connor from removing his property, Conner brandished a handgun at Choute that was secreted inside the waist of Connor's trouser. Choute describes the handgun as having a brown and black handle and small in size with a capacity to hold approximately six bullets. (*Id* at 50.) Upon seeing the handgun, Choute shouted for help while hoping that his neighbor, who was a police officer, would hear him. (*Id.*) Immediately after Connor left the premises, Choute dialed 911 for emergency police assistance. (*Id* at 51.)

Connor was subsequently arrested and charged in a six count Information with the following: Count One, First Degree Robbery, in violation of 14 V.I.C. §§ 1861 and 1862(2); Count Two, Using a Dangerous Weapon During the Commission of a First [Degree] Robbery in violation of 14 V.I.C. § 2251(a)(2)(B); Count Three, First Degree Assault-Larceny in violation of 14 V.I.C. § 295(3); Count Four, Using a Dangerous Weapon during the Commission of a First Degree Assault-Larceny in violation of 14 V.I.C. § 2251(a)(2)(B); Count Five, Grand

Larceny in violation of 14 V.I.C. §§ 1081 & 1083(1); Count Six, Using a Dangerous Weapon during the commission of grand larceny.[1]

At trial, Choute testified extensively about the incident with Connor that led to the appropriation of his laptop. However, contrary to Choute's testimony, Connor testified that he was working at his father's restaurant, Jasha Bar and Grill, at Coki Point Beach in Estate Smith Bay on the date and at the time of the robbery. In contrast, the Prosecution introduced Connor's statement to police in which Connor stated on September 28, 2010 that he was at Choute's home with permission from the landlord to do some maintenance work on the premises, but that he had not stolen the computer.

The jury convicted Connor of Counts One, Two, Five, and Six of the Information. At sentencing, the trial court opined that Counts Five and Six merged with Counts One and Two, and did not impose separate sentences for Counts Five and Six. (J.A. at 190-91.) Connor was sentenced to seven and one-half years on both Counts I and II with both sentences to be served concurrently. (*Id.*) The trial court further ordered Connor to pay a fine of $10,000 which was suspended, and to pay restitution to Choute in the amount of $486.98. (*Id* at 191.) This timely appeal ensued.

## II. ISSUES

Connor propounds the following issues on appeal:

A. The evidence presented at trial was insufficient to convict him of the offenses for which he was charged,

B. The final jury instructions were prejudicial to him for several reasons;

C. The charges were multiplicitous and, therefore, violated Connor's Constitutional rights against double jeopardy;

D. Connor should have been granted a mistrial because of improper and prejudicial statements made by the prosecutor.

E. The jury verdict on grand larceny was defective

---

[1] During trial, Count Four of the Information was dismissed by the trial court because the evidence failed to demonstrate that Connor "pointed a gun at Danton Choute" as Count Four alleges. (See J.A. at 189.)

## III. STANDARD OF REVIEW

We exercise plenary review over sufficiency of the evidence claims. *Prince v. People*, 57 V.I. 399, 413 (V.I. 2012); *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009). *See United States v. Bornman*, 559 F.3d 150, 152, 51 V.I. 1170 (3d Cir. 2009); *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). "In exercising that review, we must interpret the evidence in the light most favorable to the government as the verdict winner, and do not weigh evidence or determine the credibility of witnesses in making our determination." *Id.* (internal citations omitted). We engage in a harmless error analysis when determining whether improper prosecutor comments necessitate a new trial. *Nicholas v. People*, 56 V.I. 718, 748 (V.I. 2012); *DeSilvia v. People*, 55 V.I. 859, 874 (V.I. 2011); *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003).

Jury instructions that were not objected to at trial are reviewed for plain error. *See Elizee v. People*, 54 V.I. 466, 475 (V.I. 2010). Similarly, where there was no objection to the jury form at trial, the standard of review is for plain error. *See United States v. Arreola*, 467 F.3d 1153, 1161-62 at n.2 (9th Cir. 2006) and *Elick v. Ford Motor Co.*, 452 Fed. Appx. 161, 162 (3d Cir. 2011). A double jeopardy claim that has been raised for the first time on appeal is also reviewed for plain error. *Miller*, 527 F.3d at 60.

A reversal is justified under the plain error standard of review only after an appellant establishes: 1) that there is error, 2) that is plain, and 3) that affects substantial rights. *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012); *Galloway v. People*, 57 V.I. 693, 699 (V.I. 2012); *United States v. Fumo*, 655 F.3d 288, 309 (3d Cir. 2011). Even where all three elements are satisfied, a court of review may exercise its discretion in noticing a forfeited error where the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (internal citations and quotation marks omitted).

## IV. DISCUSSION

### A. The Evidence Adduced at Trial was Sufficient to Convict

Because it may affect the outcome of other issues raised in determining whether the other errors alleged on appeal had a prejudicial effect on the outcome of the case, I will first address whether, as Connor alleges, the evidence obtained at trial was insufficient to convict him. The

underpinning of Connor's insufficiency of the evidence argument is his urging that this Court weigh in on Choute's credibility and thereafter conclude that Choute was a confused eyewitness who misidentified Connor as the perpetrator of the crimes. (Br. of Appellant at 25.) Connor further urges us to afford much deference to his continued claims of innocence and his testimony that he was working at his father's restaurant on Coki Point Beach in Estate Smith Bay, on the day and during the time of the crimes. (*Id.*) Connor simply ignores the fact that courts of review do not serve as usurpers of the role of the jury, that we do not engage in second-guessing the evidence presented at trial, and that we are not responsible for re-weighing the credibility of witnesses. *United States v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011); *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005); and *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). In reviewing sufficiency-of-the-evidence claims, we are limited to determining whether there is enough evidence from which a rational trier of fact could establish guilt beyond a reasonable doubt. *Miller*, 527 F.3d at 60.

Choute testified extensively concerning having witnessed Connor entering his residence and removing a new, unused laptop computer. Choute further testified that although he and Connor are not well acquainted, he is very familiar with Connor having seen him in the neighborhood for at least five years prior to the incident and having seen Connor on several occasions working on the same property on which Choute resides. Nonetheless, Connor challenges the reliability of Choute's identification. Connor cites two cases in support of his contention that eyewitness testimony is inherently unreliable and should not be accorded much weight: *Virgin Islands v. Petersen*, 507 F.2d 898, 901, 11 V.I. 488 (3d Cir. 1975) and *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). However, those cases are unquestionably distinguishable from this case. In *Petersen*, the reliability of the eyewitness testimony was challenged because the witness's view of the crime scene was obstructed by shrubbery, and the street where the crime occurred was not well lit. 507 F.2d at 900. Further, in that case, two of the witnesses made inconsistent identifications of the perpetrator. *Id.* The *Biggers* case concerned a victim who was raped in a dark room by her assailant. 409 U.S. at 194. The circumstances and facts in both *Peterson* and *Biggers* are not even remotely similar to the facts and circumstances in this case.

Those cases pertain to what the United States Supreme Court has coined as "a very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 198. Here, there was never an issue raised concerning Choute's vision being obstructed during the crimes. The United States Court of Appeals for the Third Circuit ("Third Circuit") opined that eyewitness testimony should be received with caution and scrutinized with care *except* "(1) if the witness had the opportunity to observe the accused; (2) if the witness is positive in his identification; (3) if the witness' identification testimony is not weakened by prior failure to identify or by prior inconsistent identification; and (4) if, after cross-examination, his testimony remains positive and unqualified." *Petersen*, 507 F.2d at 901 n.2 (internal citations omitted). Choute's identification of Connor meets all these requirements. The trial record is devoid of any suggestion that Choute's identification of Connor has been inconsistent. Choute's identification of Connor as the perpetrator remained positive and unimpeached after cross examination by defense counsel. Importantly, Choute had considerable opportunity to observe Connor during the commission of the crimes. Choute was in his residence in an enclosed area and in proximity to the perpetrator during the commission of the crimes. The duration of the exchange between Connor and Choute was unquestionably sufficient for Choute to have secured a close observation of the perpetrator. The crimes occurred approximately at noon, and there was no evidence in the trial record that there was insufficient lighting for Choute to have seen Connor. Significantly, no evidence was presented that Connor wore a mask or head wear which concealed his identity, or that Choute's ability to view Connor was impeded in any manner. It is noteworthy that Choute and Connor were not seeing each other for the first time during the robbery. Connor had frequented Choute's neighborhood before the robbery, and Choute testified that he had on innumerable occasions observed Connor in the neighborhood socializing with other neighborhood residents. Accordingly, it is extremely unlikely and almost nil that Choute's identification of Connor amounted to "a very substantial likelihood of irreparable misidentification." Further buttressing Choute's identification of Connor are that both stood a few feet from each other and that there is no evidence that any other person or sudden occurrence of anything distracted Choute's attention away from Connor.

Despite Choute's unimpeached identification of Connor, Connor asserts that his continued claims of innocence should be accorded more weight than Choute's testimony. As I previously emphasized, this Court is not responsible for re-weighing the credibility of the witnesses. In interpreting the evidence in a light most favorable to the government, it is indisputable that a reasonable jury would find Choute a more credible witness than Connor. I re-emphasize that Choute's testimony was never impeached or discredited. Connor, on the other hand, made several inconsistent statements concerning his whereabouts on the day and during the time of the crimes.

At trial, Connor testified that at the time that Choute was robbed of his laptop computer he was working at his father's restaurant at Coki Point Beach, which is located several miles from Choute's residence in Hospital Ground. However, the trial court admitted in evidence a statement Connor made to police the day he was arrested. In this statement, Connor declared that on the date and time of the crimes he was at the building where Choute resides to do some cleaning at the landlord's request. (J.A. at 103-05.) In the same statement, Connor identified the building by its address, size, and color. (*Id.*) Connor was unable to give a reason for these inconsistent statements that placed him at Coki Point Beach in Estate Smith Bay and that simultaneously placed him several miles away in the Hospital Ground area. Moreover, Connor failed to answer many of the prosecutor's questions concerning the discrepancies in his statements. (*Id.*) Connor's inconsistent statements would obviously raise questions in the minds of reasonable jurors about Connor's credibility prompting the jurors, in all likelihood, to reject Connor's alibi as spurious.

In this case, the pivotal issue was whether the jury believed Connor or Choute. Based on the testimony and cross-examinations of both parties, it is very plausible for a reasonable trier of fact to find Choute a more credible witness than Connor. We have previously noted that "[t]he weight of the evidence is not determined by the number of witnesses who testify for either side, but by the quality of their testimony." *Dunlop v. People*, S.Ct.Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41 (V.I. Sept. 15, 2009) (quoting *United States v. Handy*, 454 F.2d 885, 888 (9th Cir. 1971)). Moreover, "[t]he testimony of one witness is sufficient to prove any fact. . . . [a] conviction may be sustained on the testimony of a single witness or victim, even when other witnesses may testify to the contrary." 29A AM.JUR.2D Evidence § 1363. Accordingly, considering

Choute's unimpeached testimony and the inconsistency in Connor's statements regarding his exact whereabouts at the time of the crimes, the evidence was sufficient for a reasonable trier of fact to convict Connor of all crimes in the Information.

## B. The Appellant was not Prejudiced by the Jury Instruction on Dangerous Weapon

Connor next asserts that the final instructions imparted to the jury were erroneous because the trial court instructed on deadly weapon as opposed to dangerous weapon. Importantly, Connor did not make any objections at trial to the jury instructions. After instructing the jury, the trial court asked counsel for both parties whether there were any objections to the instructions as given, to which both counsel replied "no". (J.A. at 149.) Thus, our review of the jury instruction is limited to plain error. *See Elizee*, 54 V.I. at 475. To find plain error, it is necessary that to find 1) an error 2) that was plain and 3) that affects substantial rights. *Beaupierre v. People of the Virgin Islands*, 55 V.I. 623, 630 (V.I. 2011). *See also United States v. Andrews*, 681 F.3d 509, 517, 56 V.I. 1007 (3d Cir. 2012) After application of the plain error test, I do not find that the jury instruction prejudiced Connor.

Connor's main contention with the jury instructions is that when instructing on the elements of 14 V.I.C. § 2251 the trial court defined a "deadly weapon" as opposed to a "dangerous" weapon. 14 V.I.C. § 2251 states in pertinent part that:

> (a) Whoever —
>
> **(1)** has, possesses, bears, transports, carries or has under his proximate control any instrument or weapon of the kind commonly known as a blackjack, billy, sand club, metal knuckles, bludgeon, switchblade knife or gravity knife or electric weapon or device; or
>
> **(2)** with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, *a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon* shall
>
> . . . .
>
> **(B)** if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of

*violence* (as defined in section 2253(d)(1) hereof) shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

(Emphasis added.) The trial court gave the following instruction:

A deadly weapon is an object that is used or may be used in such a manner that it is calculated to or likely to produce death or serious bodily harm. Whether an object is a deadly weapon depends on the essential character of the object and the manner in which it is used.

14 Virgin Islands Code 2251(a)(2) defines this term to include, but not be limited to, any dangerous or deadly weapon if possessed, bor[n]e, transported, or carried by, or had under the proximate control of, one who does so with intent to use the item unlawfully against another.

(J.A. at 159.) Connor further argues that the interchange of the word "deadly" for "dangerous" caused the jury to instead consider "deadly weapon" under 14 V.I.C. § 297, a statute which carries a higher penalty than § 2251. Connor argues that the interchange of the words deadly and dangerous caused Conner to be convicted using a lower standard. "To determine whether the Superior Court erred in its jury instructions, we must view the instructions as a whole to determine whether they were misleading or inadequate to guide the jury's deliberations." *Christopher v. People*, 57 V.I. 500, 513 (V.I. 2012). We have determined a number of times that the interchange of the words "dangerous" and "deadly" does not cause the jury instructions to be misleading, does not cause the jury to consider one statute over another, and is too insignificant to cause confusion to the jury. *See id.* at 511-13; *see also Prince*, 57 V.I. at 406-11. We rejected the contention that "deadly" and "dangerous" have widely different and significant meanings. *Christopher*, 57 V.I. at 513 (citing *Prince*, 57 V.I. at 409). We noted that "the substitution of the word 'dangerous' for 'deadly' creates a discrepancy too inconsequential to invalidate the final jury instructions, especially when the instructions are considered in their totality. . . . [and that] the interchangeable use of the terms "deadly" and "dangerous" is common when interpreting the use of a weapon in an assault charge." *Prince*, 57 V.I. at 410-11. In fact, the statutory language of § 2251 includes both the terms "deadly" and "dangerous" in its text. Connor's contention is indistinguishable from that of the

defendants in *Prince* and *Christopher*, and thus the same reasoning applies. The trial court did not commit any error in including the "deadly" as opposed to "dangerous" in its final jury instruction.

## C. The Charges were not Multiplicitous and did not Violate Connor's Rights against Double Jeopardy

Connor contends that the prosecution impermissibly charged him with multiple crimes requiring the same set of elements emanating from the same offense. Essentially, Connor makes the argument that his Fifth Amendment right protecting him from double jeopardy was violated. The Fifth Amendment to the Constitution proscribes that no individual shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Inherently, the Double Jeopardy clause encompasses several protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Schiro v. Farley*, 510 U.S. 222, 230, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (internal citations omitted). Connor's contention is undoubtedly based upon the latter safeguard.

In addressing the multiplicitous charging for the same offense, the standard test of propriety is embodied in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The *Blockburger* test holds that if criminal charges have identical statutory elements or one is a lesser included offense of the other, subsequent prosecution is barred. Prosecution and sentencing for the same conduct under different criminal statutes is permitted if each statute requires proof of a fact which the other does not. *Id.* at 304. Many of the offenses for which Connor was convicted and sentenced require the same set of elements or involves a lesser included offense of another.

Connor's contention on appeal is that first degree robbery under 14 V.I.C. § 1862(2) and possession of a dangerous weapon during the commission of a crime of violence under 14 V.I.C. § 2251(a)(2)(B) are charges that emanate from the same criminal conduct, and require proof of the same elements in violation of *Blockburger*. 14 V.I.C. § 1862(2) states in pertinent part that:

A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another perpetrator of the crime:

(2) *Displays, uses or threatens the use of a dangerous weapon.*

(Emphasis added). Similarly, 14 V.I.C. § 2251(a)(2)(B), as set forth above in this opinion establishes guilty for anyone who:

*with intent to use the same unlawfully against another, has, possesses,* bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any *other dangerous or deadly weapon . . .*

if he has previously been convicted of a felony, or has, *possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence.*

(Emphasis added). The crime of violence alleged under the latter statute is robbery. Accordingly, under both statutes the essential elements that the People are required to prove are that Connor committed a robbery in which he used or possessed a dangerous weapon, to wit a gun, in furtherance of the commission of the robbery. Importantly, the charges under the above statutes emanated from the same incident. Both sections are charged to criminalize Connor's conduct in robbing Choute while using a gun. Although § 2251 goes into greater detail concerning what constitutes a dangerous weapon, it does not include any additional facts that must be proven to obtain a conviction than what is required for a conviction under § 1862, which is possession or use of a dangerous weapon in the furtherance of a robbery. Convicting Connor under both statutes for the same offense is contrary to the *Blockburger* test. Accordingly Connor's conviction under these two statutes is violative of his constitutional rights, unless the Virgin Islands Legislature intended for the one occurrence to be punishable by both statutes.

*Blockburger* serves to protect an individual from receiving a greater punishment for an offense than what the legislature intended. *Whalen v. United States*, 445 U.S. 684, 691-92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). Cumulative punishment under similar statutes for one offense does not violate the double jeopardy clause where the legislature

311

authorizes such punishment. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

*Hunter* is analogous to this case in that the defendant appealed his convictions for first degree robbery and armed criminal activity which the defendant contended placed him in double jeopardy. Although both crimes contained some similar elements and punished the defendant for a single act, the United States Supreme Court found that there was no double jeopardy violation. The United States Supreme Court concluded that the Missouri legislature intended for an individual to be punished under both statutory provisions *Id.* In ruling that legislative intent precluded violation of double jeopardy, the Supreme Court held that:

> The question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. *Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.*

*Id.* (internal citations omitted) (emphasis added).

Whether the Virgin Islands legislature intended for the robbery statutes and § 2251 to provide multiple punishments for a single act is an issue that has already been addressed by the Third Circuit. In *Government of the Virgin Islands v. Soto*, 718 F.2d 72, 19 V.I. 642 (3d Cir. 1983), the defendant alleged that his convictions under 14 V.I.C. §§ 1862(2) and 2251 violated the Double Jeopardy Clause. The Third Circuit opined that the plain language of § 2251 clearly demonstrates the legislature's intent to authorize cumulative punishment for one offense. *Id.* at 79. Indeed, after describing the penalty to be imposed upon a defendant found to be guilty of possession of a dangerous weapon during the commission of a crime of violence, 14 V.I.C. § 2251 expressly provides that the "penalty shall be *in addition* to the penalty provided for the commission of, or attempt to commit, the crime of violence." (Emphasis added.) In promulgating this provision, it is obvious that the legislature was aware that a number of the crimes of violence punishable by § 2251(a)(2)(B) "were themselves categorized by use of a dangerous weapon." *Soto*, 718 F.2d at 79. The Third Circuit discussed the range of robbery offenses, including the second degree provision in § 1863 under which Connor was convicted and concluded that *all* robbery offenses qualify as crimes of violence for purposes of the additional punishment under § 2251:

prior to 1977, clearly *all* robberies were "crimes of violence" for purposes of applying the weapons statute. Since the legislature did not strike "robbery" from the list of "crimes of violence" following the enactment of the present robbery provisions in 1977, there is no basis to assume the legislature modified its prior determination that section 2251(a)(2)(B) applied to all robberies. Indeed, robbery was then, as it is now, defined in 14 V.I.C. § 1861, without reference to degrees. . . . In order to give effect to the continued presence of "robbery" in the list of "crimes of violence", we conclude that section 2251(a)(2)(B) continues to authorize cumulative punishments when robbery, whatever the degree, is committed with a dangerous weapon.

718 F.2d at 78 (emphasis in original).

Accordingly, I need not conduct an extensive analysis to determine the legislative intent in the punishment under sections 2251 and 1863. "[S]tatutory interpretation begins with the language of the statute itself . . . and if the statutory language is unambiguous the plain meaning of the words is ordinarily regarded as conclusive." *Gov't of the V.I. v. Knight*, 989 F.2d 619, 633, 28 V.I. 249 (3d Cir. 1993). The legislature's inclusion of language in 14 V.I.C. § 2251 that authorizes punishment under this statute in addition to the underlying crime of violence clearly manifests the legislative intent for this statute to provide an additional punishment. Since the assumption underlying the *Blockburger* test is that the legislature did not intend to punish one offense under two different statutory provisions, express legislative intent to the contrary serves as a bar to a finding of a *Blockburger* violation. *Hunter*, 459 U.S. at 366. Consequently, Connor's argument that the conviction of both 14 V.I.C. §§ 2251 and 1863 violated the Double Jeopardy Clause is spurious.[2]

## D. The Court did not abuse its discretion in denying a mistrial for the Prosecutor's Comments

Connor's next assertion on appeal is prompted by the trial court's denial of his oral motion for a mistrial because of alleged improper

---

[2] I do not address whether the lesser included offenses were violative of the Double Jeopardy Clause. Failure to raise this issue on appeal resulted in a waiver of any Double Jeopardy Clause violation. *See Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) ("any issue that could have been but was not raised on appeal is waived") (internal citation and quotation marks omitted). See also V.I.S.CT.R. 22(m).

comments by the prosecuting attorney. During his cross examination of Connor, the prosecutor asked: "Isn't it true that your mother made a promise to Mr. Choute to pay for this computer? Are you aware of that?" Counsel for the defense immediate objected and motioned the trial court for a mistrial. The trial court sustained the objection, denied the motion for a mistrial, and directed the jury to disregard the question. Connor maintains, however, that a mistrial should have been granted because the prosecutor's comments were so prejudicial that it affected the outcome of Connor's trial. (Br. of Appellant at 22-23.) In fact, Connor contends that the comments were the sole reason that he was convicted at trial. (*Id.*) I summarily reject Connor's assertion.

In determining whether a prosecutor's comment is cause for a mistrial, we engage in a two-step analysis. "First, we must evaluate whether the statement was improper." *DeSilvia v. People of the Virgin Islands*, 55 V.I. 859, 872 (VI. 2011) (citing *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007)). "Second, we must subject the prosecutorial misconduct to a harmless error review, even if the statements were properly objected to at trial." *United States v. Hasting*, 461 U.S. 499, 509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). In effect, we must determine whether the improper statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process" as Connor claims it does. *DeSilvia*, 55 V.I. at 872 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).

Connor asserts that the prosecutor's question concerning an alleged agreement made with Connor's mother and Choute was improper because it relies on evidence not introduced at trial. Generally such comments are improper because:

> (1) such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and (2) the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*Francis v. People*, 56 V.I. 370, 387 (VI. 2012) (internal quotation marks omitted).

The prosecutor made reference to an alleged agreement that Connor's mother made to reimburse Choute for the stolen laptop. The record before us is devoid of any such agreement being offered in evidence. Further, Connor's mother did not testify at trial which would have afforded Connor the opportunity to cross-examine her concerning the alleged agreement. The prosecutor's comment was of the kind that may induce the jury to make a determination based on evidence not presented before it. For instance, the jury may infer that even Connor's mother knew of Connor's guilt, otherwise she would not have offered to pay for the laptop. Accordingly, the prosecutor's questions pertaining to Connor's mother offering to reimburse Choute for the stolen laptop computer were improper.

Although improper, the comments made by the prosecutor did not likely influence the outcome of the trial, because of the overwhelming evidence presented at trial to convict Connor. As aforementioned, Connor robbed Choute during daytime hours and within the confines of a room in his apartment. Choute had prior familiarity with Connor after seeing him in Choute's neighborhood for the past five years, and from work Connor had previously performed for Choute's landlord on the same premises on which the crimes occurred. The possibility that Choute misidentified Connor as the perpetrator of the offense is highly remote or nil. Choute's testimony was not impeached and remained consistent. On the contrary, the testimony given by Connor was highly suspect and inconsistent. Connor claimed that he was working at his father's business on Coki Point Beach, which is miles away from where the incident occurred in the Hospital Ground area of St. Thomas. However, in statements he gave to the police when he was arrested, Connor claims to have been at Choute's residence during the date and time of the incident by invitation of Choute's landlord. In consideration of such condemning evidence offered at trial, it is a remote possibility that Connor would not have been convicted but for the prosecutor's comment. "If our review of the record convinces us that the jury would have convicted the defendant even had it not been exposed to the allegedly improper prosecutorial comments, we must conclude that no actual prejudice accrued." *Gov't of the V.I. v. Joseph*, 770 F.2d 343, 350 (3d Cir. 1985). Accordingly, I find the trial court did not err in denying Connor a mistrial.

### E. The Jury Verdict on Grand Larceny Violated Territorial Statutory Law

Connor next argues that his conviction for grand larceny should be reversed because the jury failed to ascertain and declare the value of the property stolen in the jury verdict. Connor asserts that the jury verdict is defective because it fails to conclusively convict him of taking property valued at $100 or more as required for a finding of grand larceny under 14 V.I.C. § 1083. Importantly, a determination of the value of the property stolen in jury verdicts for larceny convictions is mandated by 5 V.I.C. § 3636 which provides that:

> When an information charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained.

This Court has previously found plain error based on the failure of a trial court to apply "well-established" legal precedent in sentencing a defendant. *See Brown v. People*, 56 V.I. 695, 701-03 (V.I. 2012). In this case, the law directly mandating the jury to declare the value of the property stolen has been the law of the Virgin Islands since at least 1921. *See* 5 V.I.C. § 3636, historical note. 5 V.I.C. § 3636 leaves no discretion because it states that the jury "shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained." *See Shoy v. People of the Virgin Islands*, 55 V.I. 919, 927 (V.I. 2011) noting that the use of the word " 'shall' " in statutory authority "normally serves to create an obligation impervious to judicial discretion"), citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998). Therefore, any verdict that omits such a pivotal and necessary element or provision is void *ab initio* and cannot be otherwise rectified. It is simply a deficient and void verdict. I will not condone a conviction based upon an explicit violation of law.

Additionally, this error is one of constitutional magnitude because the value of the property is directly correlated to the severity of the sentence. Further, it would not be unreasonable to assert that the wanton and callous disregard of a statute, which has been in effect in the Virgin Islands for over eighty years, is an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 466-67.

Although Connor did not object to the jury verdict at trial, the failure to follow statutory mandate presents clear error that warrants correction. *See Harris v. State*, 635 P.2d 1165, 1169 (Wyo. 1981). We have multitudinously declared that when the statutory language is clear, that is the end of the matter. *Miller v. People*, 54 V.I. 398, 403 (V.I. 2010); *People v. Baxter*, 49 V.I. 384, 388 (V.I. 2008); *In re Adoption of Sherman*, 49 V.I. 452, 456 (V.I. 2008). The legislature clearly directed the courts to elicit from the jury a statement of value of the property stolen when the jury renders its verdict. Courts must comply with the legislative mandate that the value of the property stolen shall be included on the jury verdict as part of the element of the verdict. *See Munoz v. Maschner*, 590 P.2d 1352, 1356 (Wyo. 1979).

Jury statements of the value of property stolen in their verdicts of theft related offenses are especially important when the degree of the sentence or crime is dependent upon the value of the property stolen. *See Henson v. People*, 166 Colo. 428, 444 P.2d 275, 277 (Colo. 1968) (holding that where value of the good was necessary for the higher grading of grand larceny, it is vital that there be some basis for the determination of value in the jury verdict rather than mere speculation). *See also Harris*, 635 P.2d at 1167 (holding that the statute was intended to require the "determination and declaration in the verdict of value of the goods by the jury only in those cases in which the grade of the offense depended upon value"). The legislative requirement that the determination of value in the jury verdict should not be dispensed with, as it was in this case, because the severity of the sentence is dependent on the value of the property. *See People v. Tuhl*, 211 Ill. App. 377, 378 (1918) and *Buckles v. State*, 622 P.2d 934, 935-36 (Wyo. 1981). Here, there was no admissible evidence in the record that established the value of the property stolen.

Under the Virgin Islands Code, larceny is divided into petit and grand larceny. Petit larceny does not require a specific value for the property illegally taken and carries a sentence of not more than 1 year imprisonment or a fine of not more than $200. *See* 14 V.I.C. § 1084. On the other hand, grand larceny requires that the value of the property taken be $100 or more and carries a sentence of not more than 10 years. 14 V.I.C. § 1083. Fundamentally, the value of the property unlawfully appropriated means the difference between a one year sentence and a ten year sentence. The United States Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for

a crime beyond the prescribed statutory maximum *must* be submitted to a jury, and proved beyond a reasonable doubt" even if the statute refers to such fact as a sentencing factor. *Apprendi v. New Jersey*, 530 U.S. 466, 490-92, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (emphasis added). *See also United States v. O'Brien*, 560 U.S. 218, 130 S. Ct. 2169, 2174-75, 176 L. Ed. 2d 979 (2010) (all elements of a crime must be proven beyond a reasonable doubt to a jury, even if such factors are referenced as sentencing factors). The Supreme Court further declared that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (quoting *Jones v. United States*, 526 U.S. 227, 252-53, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)).

Accordingly, since the jury verdict for grand larceny does not include the value of the property stolen, I would remand this case to the trial court with instructions to vacate the verdict of grand larceny.

## V. CONCLUSION

For the reasons elucidated above, the defendant's convictions on Counts One, Two, and Six of the Information should be affirmed. However, his conviction Count Five, grand larceny, should be vacated because, in violation of Connor's substantial rights, the trial court failed to follow a legislative mandate and ensure that the jury verdict included the value of the property stolen.